#### IN THE

## SUPERIOR COURT OF JUDICATURE,

#### FOR THE

## COUNTY OF CHESHIRE, JULY TERM,

### A. D. 1838.

---

## FRENCH *vs.* HALL.

The regularity of proceedings for the attachment, levy and sale of personal property on execution, is to be determined by the laws of the state where those proceedings take place.

The validity of a contract for the sale of personal property, and the title to the property under that contract, depend upon the laws of the state where the sale is made and the property delivered, unless it is made in fraud of the laws of the state where the vendor resides, or comes within some other exception to the general rule.

Where an inhabitant of Vermont, being within the state of New-Hampshire, sold and delivered a sulky to a citizen of the latter state, for a full consideration ; and the purchaser, having caused repairs to be made upon it, and used it as his own about two months, afterwards let it for hire to the former owner, to go into Vermont ; where it was attached as his property, and sold upon execution, for which an action was brought against the officer in this state ; *held,* that the regularity of the proceedings, in attaching and selling the property, was to be determined by the laws of Vermont ; but the validity of the title to the property, under the contract of sale, there being no evidence of an intention to evade the laws of Vermont, depended upon the laws of this state ; and that there was a sufficient possession to pass the property as against creditors.

TROVER for a sulky. It appeared in evidence that the sulky formerly belonged to one William Pope, of Bellows Falls, in Vermont, and was there used by him, and known as his property. On the 2d of May, 1837, Pope sold it to the plaintiff, at Keene, in this state, where the plaintiff resides ; and the plaintiff paid him the value of it, procured repairs to be made on it, and used and let it with his other carriages, he being the keeper of a livery stable.

The latter part of June following, Pope hired the sulky of the plaintiff, to go to Bellows Falls, and return the next week. The day after he arrived there he drove it to Drewsville, in this state, and returned to Bellows Falls ; and while there it was attached and taken by the defendant, a deputy sheriff, upon a writ against Pope, as his property, and afterwards sold upon the execution. Pope notified the defendant, when he came to attach the sulky, that it was not his, and that he had sold it to the plaintiff two or three months before. The defendant said he had reason to suppose that it belonged to the plaintiff, but that he was indemnified.

Upon this evidence the defendant contended that, by the law of Vermont, the sulky was liable to be attached and sold as the property of Pope ; and a verdict was thereupon taken for the plaintiff, by consent, subject to the opinion of this court upon the foregoing case.

*Kellogg*, (of Vt.) and *Wilson*, for the defendant. Upon the facts found in this case, it is respectfully insisted, that the verdict should have been for the defendant.

I. We contend that the property in dispute having been seized by legal process within the territory and jurisdiction of Vermont, the question, whether the seizure was lawful, is to be determined by the laws of Vermont. *See Story's Commentaries on the Conflict of Laws*, 462, *and the cases there cited ; Ogden* vs. *Foliot*, 3 *Term Rep.* 730.

It is upon the principle of state sovereignty over personal property within its territory, that the personal property of non residents is subjected to attachment and execution, which could not be if it were true that it had no *situs* except the domicil of the owner.

The denial of this right would lead to a direct conflict and collision of the authorities of the different states. In Vermont, mortgages of personal property are not sustained unless the mortgagee take and retain the possession of the property, while in New-Hampshire the reverse is understood to be

settled law.   Suppose a citizen of Vermont passes into New-Hampshire, and there mortgages his personal property, and immediately returns to Vermont with the property, where his creditors attach it ; can these attaching creditors be defeated by the mortgagee ?   Surely they cannot by the laws of Vermont ; and shall the creditor, or his officer, if found in New-Hampshire, be held liable for the doing of an act, which, by the laws of the country where performed, was perfectly justifiable ?   The maintenance of such a doctrine, it is believed, would tend most injuriously to affect the intercourse between the states, and lead to the most abominable frauds, without the power of detecting them.

So in the case of sales of personal property ; while, in New-Hampshire, the want of a change of possession is regarded as merely *prima facie* evidence of fraud, and subject to explanation, in Vermont, the same is regarded as a circumstance, *per se*, rendering the sale absolutely fraudulent and void.   It is conclusive evidence of fraud.

Here there is an evident conflict between the laws of the two states, and the question is, what shall be done to prevent collision, and at the same time preserve the rights of parties ? We answer, adopt the principle (which we believe to be a sound one) that every state has complete sovereignty and jurisdiction over personal property, as well as real, while it remains within the territory, and the difficulty is removed.

The mortgagee and vendee are supposed, nay, bound to know the laws of the country to which they send, or permit their property to be carried ; nor is it a greater hardship to subject their property to the jurisdiction of the country where actually situated, than it is that their persons are subjected to the laws of the country into which they pass.

II. We insist that the property in question was, by the laws of Vermont, under the circumstances in which it was found, liable to be taken in execution as the property of Pope.

1. It is settled law in Vermont, and has been for a quarter

of a century at least, that upon the sale of personal property, where the vendor is in actual possession at the time of sale, there must be an actual change of possession, in order to render the sale valid as against the creditors of the vendor; a constructive change is insufficient.

2. This change of possession must be visible and substantial.

3. The continuance of the possession by the vendor, after the sale, renders the same fraudulent and void. It is not merely *prima facie* evidence of fraud, but a circumstance, *per se*, which renders the transaction fraudulent and void.

The following cases, it is believed, fully sustain the foregoing positions. 1 *Aiken's Rep.* 162, *Mott* vs. *McNeil;* 1 *ditto* 116, *Durkee* vs. *Mahony ;* 1 *ditto* 158–161, *Boardman* vs. *Keeler ;* 2 *Aiken* 64, *Weeks* vs. *Weed, opinion by Judge Prentiss ;* 2 *Vermont R.* 168, *Batchelder* vs. *Carter* ; 2 *ditto* 181–185, *Beattie* vs. *Robin ;* 2 *ditto* 374, 376, 377, 378, *Barney* vs. *Brown ;* 4 *ditto* 462, *Harding* vs. *Janes ;* 5 *ditto* 34, *Moore* vs. *Kelly ;* 5 *ditto* 231, *Judd and Harris* vs. *Langdon ;* 6 *ditto* 521, *Farnsworth* vs. *Shephard ;* 8 *ditto* 334, *Peirce* vs. *Chipman ;* 8 *ditto* 352–356, *Emerson* vs. *Hyde.*

It is abundantly evident, from the authorities above cited, that in Vermont, to constitute a valid sale of personal property, as against creditors, there must be a visible and substantial change of possession.

By substantial change of possession, must be understood that change which is calculated to give notoriety to the sale in the neighborhood of the vendor, so that his after possession would not be calculated to mislead creditors, and give the vendor a false credit.

The case does not find that any notoriety was given to this sale at Bellows Falls, the residence of the vendor, nor even at Keene, the residence of the vendee, unless it is inferred from the plaintiff's repairing the sulky, and letting it, the extent of which does not appear.

The change of possession, then, in this case, was not such as to accomplish the object contemplated by the adoption of the rule, and consequently was not such a substantial change of possession as is required by the settled law of Vermont. 1 *Aiken's R.* 165, *Mott* vs. *McNeil.*

Again—If the doctrine be sanctioned, that a citizen of Vermont can pass into New-Hampshire, and there make a sale of his property, and give a mere temporary possession to the vendee, while it is entirely unknown in the neighborhood of the vendor, and then return to Vermont with the property, and by this means defeat his creditors, the court will see that instances of this kind of sales would soon become numerous, in fraud of the laws of Vermont.

To say that by proving the sale collusive, it will be avoided, is no sufficient and satisfactory answer, for it was the difficulty of proving such sales fraudulent, the knowledge of which is usually confined to the parties, that led originally in England, and several of the states in this country, to the adoption of the rule requiring a substantial change of possession.

*L. Chamberlain,* and *Vose,* for the plaintiff.

PARKER, C. J. It is undoubtedly true, that the regularity of the proceedings, by which the sulky was attached and sold as the property of Pope, is to be tried and determined by the laws of Vermont. The attachment and sale took place within that jurisdiction, the property being found there at the time. It was thus properly subject to the laws there existing; and even if the same course had not been there resorted to, in order to sell and apply the property in discharge of the debt, as would have been requisite to effect the same purpose here, we are not, for that cause, to hold the proceeding void, if the course adopted was one sanctioned by the laws of that government. *Story's Conflict of Laws* 462, 321; 13 *Pick.* 53, *McRae* vs. *Mattoon.* The process under

which the defendant acted is to justify him here, for all acts for which it would be a justification in the courts of that state. "Whatever is a justification in the place where the thing is done, ought to be a justification where the case is tried." *Cowper* 175, *Mostyn* vs. *Fabrigas.* But the right of action is transitory. *Ibid ;* 1 *Chitty's Pl.* 268, 273 ; 9 *Johns.* 67, *Glen* vs. *Hodges ;* 2 *W. Black. R.* 1058, *Rafael* vs. *Verelst ;* 14 *Johns.* 134, *Gardner* vs. *Thomas.*

But in this case no exception has been taken that the proceedings for the attachment and sale were not in due course, if the property could lawfully be seized, for the satisfaction of the debt against Pope, any where ; but the plaintiff contends that this property was not the property of Pope, and not liable to be taken, in any jurisdiction, for the satisfaction of his debt—that he himself was the owner at the time, having purchased the property of Pope two or three months previous, and that no law of Vermont authorized the defendant to take his property, and apply it to the satisfaction of Pope's debts. The right to take depends upon the title to the property, and the question is one of property ; for if the plaintiff is correct in the allegation that the sulky belonged to him, it is not suggested that any law of Vermont would justify the attachment and sale of it to pay the debt of another. Such a law, if it existed, would render it questionable whether comity ought longer to exist ; for it would be little better than a legalized system of piracy. There is no such reproach resting upon the character of our sister state.

The question which we are called upon to determine is, who, upon the facts disclosed in this case, was the legal owner of the property in controversy, as against creditors, when it was seized by the defendant. If, as against creditors, it belonged to the plaintiff, his action is well sustained ; but if it did not, the defence must prevail, notwithstanding there had been such a contract, or sale, that Pope himself could not have withheld the sulky from the plaintiff. The attachment and return of the officer, and other proceedings,

in Vermont, do not settle the right of property. *11 Mass. 165, Bott* vs. *Burnell; ante 76, Brown* vs. *Davis.*

There is no question that the sulky once belonged to Pope, who then resided, and perhaps still resides, in Vermont; and this is *prima facie* evidence for the defendant; but the plaintiff undertook to show that about two months prior to the time when it was attached, he fairly and legally purchased it, and thus became entitled to maintain this action. He proved the contract of sale as alleged, the payment of a full consideration, the delivery of the property, and acts of ownership by him until Pope hired it of him, he being the keeper of a livery stable.    The defendant does not deny that these things were done, but he contends this sale was void, as against creditors, by the laws of Vermont, and that he was therefore entitled to treat the sulky as the property of Pope, when he found it afterwards in Pope's possession; and he cites several authorities from the reports of that state, which he contends support his position.

If the sale of the sulky had taken place within the state of Vermont, then the validity of the sale, as well as the proceedings to attach and levy upon the property, must be tried by the laws there in force at the time the sale was made; and it may well be admitted that in such case the question whether the sale was valid as against creditors there, should, of right, be tried by those laws, as well as the question, whether it was valid as between the parties to the sale.

But the sale did not take place within the limits of that state, or within several miles of it.    The contract of sale was made, the consideration paid, and the delivery perfected within this state; and the plaintiff held and used the property here for a considerable period afterwards; and upon what principle is it that the validity of this sale, thus made by the owner, within the limits of this state, is to be determined, for any purpose, by the laws of another state?

The plaintiff is a citizen of this state, and the purchase by him would appear to have been in the course of his ordi-

nary business, he keeping horses and carriages to be let for hire. At least, the case shows that to be his occupation, and there is no evidence tending to show that the purchase was not so made. This is not a sale made by the owner, in the place of his domicil, of property situated in another jurisdiction. Nor is there any evidence, upon which it could be left to a jury to find that Pope resorted to this state, to make a sale which was prohibited by the laws of Vermont, and with a view of evading those laws. The contract of sale might as well have been made there as here ; and if it may be surmised that Pope sold because he was in debt, that, it is supposed, would not avoid the sale in either state, so long as there is no evidence that he did it *to* prevent an attachment ; or, if he did, that the plaintiff was at all conusant of any such intention.

Nor is there any thing else to bring the case within any exception to the general rule, that the validity of a contract, for the sale of personal property, must depend upon the laws of the government where the contract was made and executed, and the property delivered. *Story's Conflict of Laws* 200, 317, &c. Nothing was done in Vermont, and nothing remained *to be done* there *in order to* complete the sale ; nor was the sale injurious to the interests of that state ; nor opposed to its policy ; nor did it grow out of any illegal transaction ; nor was it against morals or public rights.

The validity of the contract of sale, then, must be determined by the laws of this state ; and would, doubtless, have been so determined, had this action been brought in the courts of Vermont. 6 *N. H. R.* 150, *Douglass* vs. *Oldham.*

In determining this question, the subsequent conduct of the parties—the hiring by Pope—the possession of the property, within the limits of Vermont, by him, at the time of the attachment—and the permission of the plaintiff by which it thus went into his possession—may all be taken into the account, but only as they bear upon the question, whether the contract of sale was valid or void. If it was

once valid, as against creditors, no subsequent possession by Pope, as a mere bailee, nor any taking of the property into the limits of another state, can render it void.

It seems to be conceded, if the contract of sale is to be tried by the laws of this state, that there was a sufficient change of the possession, and that the sale must be held valid and the plaintiff's action sustained.

If we rightly apprehend the law of Vermont, as gathered from the cases cited by the defendant's counsel, the result of a trial by that law must probably have been the same.

It seems to be supposed, that there is a substantial difference in the rule relative to sales of personal property, as held in the two states; possession of personal property, after an absolute sale, in this state, being held to be, *prima facie*, and if unexplained, conclusive evidence of fraud; while in Vermont it is held to be fraud *per se*. The expressions in some of the cases, taken alone, might perhaps well lead to such a supposition; but the general current of the authorities seems to indicate, that the principle held in both may perhaps be substantially the same. There might, in that case, be some difference of opinion as to some of the applications which have been made of the principle.

The leading case in this state is *Coburn* vs. *Pickering*, 3 *N. H. R.* 415, in which it was held, that "any trust attend- 'ing a sale of chattels is a fraud with respect to creditors. 'And if the vendor of chattels retain possession after an 'absolute sale, this is always *prima facie*, and if unexplained, 'conclusive evidence of a secret trust." And further, that an agreement made after the sale, on the same day, that the vendor should retain possession, and pay rent to the vendee, was not a sufficient explanation. By the law of this state, therefore, in order to a valid sale as against creditors, there must be a change of possession; and doubtless an open, visible and substantial change; or there must be some sufficient explanation why the property was left in the possession of the vendor. It is not said that the change must be

actually known and notorious. What will constitute a sufficient explanation has never been fully settled; but its nature is, in some degree, indicated by the fact, that an agreement that the vendor might retain possession, under a lease, has been held not to be sufficient.

In this case, however, there was a change of possession, continuing about two months; and the courts of Vermont, although they hold that "a sale of personal property, unaccompanied with a change of possession, is *per se* fraudulent as against the creditors of the vendor," do not hold, where there has been a visible substantial change of the possession, that the sale is fraudulent, if the property is, afterwards, upon a hiring, suffered to go back into the possession of the vendor, for a temporary purpose. 6 *Vermont Reports* 521, *Farnsworth* vs. *Shephard;* 8 *ditto* 356, *Morris* vs. *Hyde;* 4 *ditto* 462, *Harding* vs. *Janes.*

From the opinion of Mr. Justice Prentiss, 2 *Aiken's R.* 69–70, it seems there are exceptions to the rule as held in Vermont. Perhaps an impossibility of removal and change of possession, from whatever cause, might be held to constitute an exception. If what would be held here to be a sufficient explanation, would there negative the fraud and form an exception, the difference between the law, as held in the two states, is rather one of terms than of principles. However this may be, there must in this case be

*Judgment for the plaintiff.*