## McCONIHE *vs.* SAWYER.

It is competent for the jury to find a conveyance fraudulent, upon evidence tending to show fraud, although there may not be direct evidence of the fraud.

A deed made to defraud creditors, is void as to subsequent, as well as existing creditors.

McConihe *v.* Sawyer.

Possession by a grantee of land is not competent evidence to show that his deed was *bonâ fide.*

Land extended upon by an execution is sufficiently set out by metes and bounds, within the meaning of the statute, if it be described as bounded by the lands of other persons, provided its situation can be ascertained.

Where the interest of a husband in land assigned to his wife as dower, is taken in execution, the annual value of the land should be appraised, and the land set off to the creditor, to hold for a sufficient time to satisfy the judgment, if the wife should live so long.

But where the appraisers estimated the land to be worth fifty dollars per year, and the officer returned the execution satisfied for that sum, and that he had set off the land by metes and bounds—*Held,* that the creditor was entitled to the possession of the land for one year from the date of the *habere facias.*

In such case, the quantity of estate should be so limited in the *habere facias,* that the creditor should hold the land for one year only, provided the tenant for life should live so long.

If an objection on account of variance between the declaration and the proof be not taken at the trial, it will be considered as waived.

It is not proper practice that evidence should be admitted on trial, subject to exceptions, without a statement of the exceptions at the time; and the court will not, in such case, set aside a verdict on account of a formal objection, although the evidence was thus admitted by consent of the parties.

Whether a tenant who holds under a fraudulent title, can take exceptions to the extent of an execution under which the demandant claims, *quære?*

WRIT OF ENTRY, for several tracts of land in Merrimack, in this county. Plea, the general issue.

The demanded premises consisted of one piece of land, containing twelve acres, and three other pieces of land adjoining each other.

It appeared that on the 5th day of July, 1828, one Samuel Sawyer was seized of the twelve acre piece. He also occupied the other tracts, in right of his wife, to whom they had been assigned as her dower in the estate of her former husband, Jonathan Hay, excepting two parts thereof, which lay between the tracts thus assigned as dower, and belonged to other persons.

On the 5th day of July, 1828, Sawyer, who was then in embarrassed circumstances, conveyed the twelve acre piece, and the dower land, to the tenant, by two deeds. Afterwards he became indebted to the demandant, who, in the year 1834,

commenced a suit against him to recover his debt, caused all the land conveyed to the tenant to be attached, recovered judgment, and levied his execution on the land as the property of Sawyer, on the 25th day of March, 1836.

The appraisers described the land levied upon, and appraised it as follows :

" A piece of up-land, in Merrimack, beginning west by land of Joseph Barnes, north by land belonging to the heirs of Jonathan Hay, east by land of said Barnes, and south by land of Samuel McConihe ; and we do upon our oaths say, that the same tract of land is of the value of fifty-four dollars, and we have set off the same land by metes and bounds as aforesaid." They also returned that they had appraised some buildings, at the sum of three hundred and ten dollars, and that they had examined another tract of land and buildings, situated near the above described buildings, and bounded east by Merrimack river, north by land of Nathan Parker and James Riddle's land, west and south by land of Samuel McConihe, being the same premises which were set off to the widow Rachel Hay, as her right of dower, and that " the last described premises, the rents and profits by the year are worth fifty dollars per year, and no more, and we have set off the whole of the above described estate by metes and bounds."

The officer returned the execution satisfied for the sum of three hundred and sixty-four dollars, the value of the land and buildings, and fifty dollars for the rents and profits.

The levy was admitted in evidence, subject to such exceptions as the tenant might make.

Upon the trial, the demandant offered evidence tending to prove that the conveyances from Sawyer to the tenant were without consideration, and were made with the view of delaying and defrauding creditors ; and the court instructed the jury, that if they were without consideration, and were made with this view, they were void as to the demandant, although his debt accrued subsequent to the conveyances.

The tenant offered evidence to prove his occupation of the premises subsequent to the attachment thereof by the demandant, as tending to show that his purchase of the land was *bona fide;* but the evidence was rejected by the court.

The jury returned a verdict for the demandant, which the tenant moved to set aside, on account of the instruction of the court, the admission of the levy, and the rejection of the evidence.

*C. H. Atherton,* for the tenant. The twelve acre piece is not set off by metes and bounds, within the meaning of the statute. There should be a strict compliance with all the requisitions of the statute. The word "metes" means "admeasurements," and the word "bounds" means "monuments;" but the land has not been measured, nor have any monuments been erected. And it is expressly said, in the case of *Mead* vs. *Harvey,* 2 *N. H. Rep.* 497, that it is the duty of the appraisers to set off the land by metes and bounds, and that case shows also the necessity of a strict adherence to the statute. The description should be certain in itself, and should not depend for its certainty upon any thing extraneous. Here there is no description of the land, without depending upon the boundaries of the land of other persons.

The descriptions in extents should be more precise than in deeds, and the principle applicable to deeds cannot govern the former. In a deed the construction is to be against the grantor, because it is a voluntary conveyance; the grantor may or may not convey. But an extent is a proceeding *in invitum,* and there are many words which would be sufficient, as between grantor and grantee, which would be insufficient in an extent; because, whatever words are used are not the words of the debtor, and cannot, therefore, bear a construction against him.

We also except to the mode in which the execution was levied upon the land held by Sawyer in right of his wife. The statute provides, that when lands and tenements cannot

be divided and set out by metes and bounds, the sheriff shall extend the execution upon the rents thereof. *N. H. Laws* 102. But this cannot be done where the lands might have been divided; and here it is not shown that a division might not have been made. Moreover, where the rents are levied upon, the levy should be such that the creditor may hold them for a sufficient number of years to produce the sum required. Here the levy can only be construed to be a levy upon the rents for one year, if it amount even to that, as no time is specified. The year must commence at the date of the levy; and, as it expired long ago, the creditor can take nothing under it.

The demandant acquired no seizin of the land by this levy upon the rents and profits, and cannot maintain a writ of entry. *Stearns on Real Actions;* 10 *Mass.* 260, *Barber* vs. *Root.* His levy is only a charge, or incumbrance, upon the land, and does not disturb the seizin.

But, whatever seizin he acquired, it was not a seizin in fee. The case shows that he had no right but to an estate determinable on the death of either Sawyer or his wife, and he should have so declared. There is, then, a variance between the declaration and the proof.

We further contend, that the evidence of the tenant's occupation subsequent to the attachment was admissible on the question of the character of the conveyance from Sawyer. The presumption is, that occupation under a deed is *bona fide*, and we desire the benefit of that presumption which depends upon the evidence we proposed to offer. There would have been more reason to suspect that the transaction was dishonest, if the tenant had not occupied the land, than if he had; and we wish to prove that he did occupy, as one circumstance tending to show that his acts were consistent with the presumption of good faith.

We also contend that to make a conveyance fraudulent as to subsequent creditors, there should be direct proof both that the grantor was in debt, and that there was fraud. It is not

McConihe *v.* Sawyer.

enough that the evidence merely tends to show fraud. Here the deed to the tenant was recorded, and he went into possession before the demandant's debt was contracted. There could, then, be no positive evidence of fraud on the demandant, and he could not have given Sawyer credit on account of his occupation, for the tenant was in possession.

*Farley*, for the demandant. It is well settled that a conveyance, with intent to defraud creditors, is void as to persons subsequently becoming creditors. *Smith* vs. *Lowell*, 6 *N. H. Rep.* 67 ; *Goodwin* vs. *Hubbard*, 15 *Mass.* 215.

As to the levy of the execution, it is enough if the description of the land be such that it can be found. A description of land as bounded by the land of A. and the land of B., is certain enough ; and if there be a reference to other deeds, that is just as certain. A levy is not avoided because the land of others is included in it. If a part of the land levied upon be found not to belong to the debtor, then an action on the judgment would lie for the unsatisfied balance ; but the levy would be good for so much as the debtor owned. However specific may be the measurements and monuments, the land of others may be included ; and in any event reference may be necessary to the land, and the titles of others. Nothing more than certainty can be required ; and if that be attained, it is immaterial whether metes and bounds be described, or there be a mere reference to the land of others.

Sawyer had an interest in the dower land, that was subject to be taken for the payment of his debts. But its value could not be ascertained, except by making an estimate of its annual value. From its nature, it could not be divided. It is like an estate in reversion or remainder, which cannot be divided.

It is objected, that the value of the dower land is appraised for one year only. But that is not the fair construction of the certificate of the appraisers. It was intended that the creditor should hold the land until the debt should be paid.

McConihe *v.* Sawyer.

It is absurd to suppose that any other intention existed, and the yearly value was appraised that it might be ascertained how long the creditor must hold it. No violence is done to the language used, by giving it such a construction. The levy was for the purpose of giving the creditor seizin of all the estate the debtor owned, until the debt should be paid from the rents and profits.

No question was made at the trial, as to the seizin in fee, and nothing was said about variance. No such question is raised by the case, which finds only that a writ of entry was brought. Any difficulty on this point might have been obviated at the trial, by an amendment, and the objection should not now be entertained by the court.

GILCHRIST, J. The case finds that the demandant offered evidence tending to prove that the conveyances from Sawyer to the tenant were made with the view of delaying and defrauding creditors; and that the court instructed the jury, that if they were made without consideration, and with this view, they were void as to the demandant, although his debt accrued subsequent to their execution.

The counsel for the tenant objects, that they cannot be considered void merely because there is evidence tending to show fraud, but that there should be direct proof of the fraud. As to this point, it is admitted that fraud is never to be presumed, but that it must be proved. But in civil cases, the *quantum* of evidence upon which the jury should find a fact, or an intent proved, is not so strictly defined as in criminal cases, where the jury must be convinced beyond a reasonable doubt of the guilt of the accused, before they can properly return a verdict against him. Therefore, if in a civil case there be evidence competent to be submitted to the jury, because it tends to prove a fact, the jury may find the fact upon it. If they disbelieve it, or think it too slight to justify the conclusion desired by the party, they may lay it aside. It is a matter on which they are to exercise their judgment.

McConihe *v.* Sawyer.

Now the position of the counsel is, in substance, that if the jury should not be satisfied, beyond a reasonable doubt, of the fraudulent intent in this case, if the evidence do not directly prove the intent they should find for the tenant. But we are not aware that this strictness of proof has ever been required in civil cases, even where fraud is alleged. If the evidence be legally competent to prove the fraud, it is for the jury alone to say whether they are satisfied that the fraud existed. And their result is a final one, unless their verdict should be so decidedly against the weight of the contradictory evidence there may be on the point, that it would become the duty of the court, from a regard to justice, to set it aside. We think evidence of this character is sufficient to warrant the finding.

The counsel has not, in his argument, objected to the instruction of the court upon this subject. But a doctrine contrary to that entertained by the court, could not be maintained. That subsequent creditors may take advantage of the fraud, and avoid the conveyance, is a principle stated in *Smith* vs. *Lowell,* 6 *N. H. Rep.* 67, and in *Paul* vs. *Crooker,* 8 *N. H. Rep.* 290 ; and is so generally the received doctrine both in England and the United States, as to be no longer an open question.

The objection that land upon which an extent had been made, was not set out by metes and bounds within the meaning of the statute, does not appear to have been taken or examined in any reported decision of this court, but it has arisen and been decided in other courts in New England ; and there are decisions upon an analogous point in the English reports. In the case of *Den* vs. *Lord Abington, Dougl.* 476, it is held that the moiety of the debtor's lands, extended upon by a writ of *elegit,* must be set out by metes and bounds. And the same point is decided in *Fenny* vs. *Masters,* 1 *B. & Ald.* 40, upon the authority of Lord Holt, in *Pullen* vs. *Birkbeck, Carth.* 453.

It does not appear, from either of these cases, how minute

the description of the lands must be, or whether monuments should be erected, and distances given. But in the form for the sheriff's return, contained in the inquisition upon a writ of *elegit*, as given in the appendix to *Watson's Sheriff* 386, the land is described as " abutting towards the east, on, &c. ; towards the north, on, &c. ; towards the west, on, &c. ; and towards the south, on," &c., which is no more particular a description than, and as little a setting out by metes and bounds, as the return in the present case. And a return, even less precise, stating no abuttals nor boundaries, is contained in *Bingham on Executions* 428. It would seem, therefore, that so strict a construction is not given to the words " metes and bounds," according to the English practice, as is contended for by the counsel ; and his construction of these words would require that the description of the land should be complete in itself, without reference to any other lands ; that monuments should be erected, and that the spaces between them should be measured, so that a reference to the record would always enable any person to find the land, without inquiring into the boundaries of the adjoining lands.

If the description depended entirely upon the monuments, there might be some practical difficulty in finding the lands, where no reference was made to land of other persons. But certainty in the description is all that can be desired, and land might be said to be set out by metes and bounds, by such a reference to the boundaries of other lands as would adopt them as the metes and bounds of the land in question. Such has been the practical construction of the statute in this state, and a similar construction has been sanctioned by the courts in Maine and Massachusetts. In the case of *Buck* vs. *Hardy*, 6 *Greenl.* 162, the premises in an extent were described as " the westerly half of the ground floor of the store occupied by E. S., and of the cellar under the same, divided from the residue of said store by a line running from a mark on the north side of said store through the centre of the same, southerly to land of J. H." It was objected, that the land was

McConihe *v.* Sawyer.

not set out by metes and bounds ; but the court held that it would be going too far to require that, in every levy, the exact length of each line should be set out, and the exact quantity of land, in square feet, rods, or acres ; and that if the land were described with such certainty that there could be no doubt as to its location, it was sufficient.   In *Boylston* vs. *Carver*, 10 *Mass.* 515, where the same objection was taken, it was held that the extent was sufficient, as a reference was made in the return to deeds of the same land, upon record, in which there was a sufficient description by metes and bounds.   And a levy was held to contain a proper description by metes and bounds, in *Hedge* vs. *Drew*, 12 *Pick.* 141, where the land was described as the " westerly half " of a dwelling house, " with the land the westerly half of said house stands on, and the part of the garden back of the said house, the width of the house," to a bound specified.   As it is not contended that there is any difficulty in ascertaining where the twelve acre piece is situated, and as the description, therefore, is sufficiently certain for every useful purpose, the judgment of the court is, that the land is set out by metes and bounds, within the meaning of the statute.

The execution was extended also upon Sawyer's interest in the land assigned to his wife, as her dower in the estate of her former husband ; and it is said that, with regard to this, there is a variance between the declaration and the proof ; the demandant having counted upon a seizin in fee, and the case showing that the only estate he could acquire, under the levy, was an estate *pur auter vie.*   This exception should have been taken at the trial.   No question of seizin arose there, nor is any stated in the case.   If the objection had been then taken, it might have been obviated by an amendment.   Perhaps it may be said that this exception is rightfully taken, on account of the general clause in the case, which seems to save all exceptions to the levy.   But this practice, of which instances often occur, of admitting evidence subject to exceptions, without a statement of them at the

time, is, at any rate, an extremely inconvenient one. If strictly adhered to, after every objection to matters of substance has been taken and overruled, the party excepting may still defeat his opponent upon a mere matter of form, which might easily have been obviated, if attention had been drawn to it at the trial. The only result accomplished by such a course, is delay; for, if the verdict be set aside on this ground, it is only that another trial may be had, which will surely establish the right of the party to a verdict, as nothing will remain to be done but to correct a formal error. Delays on such grounds are so opposed to a proper administration of justice, that we shall not set aside a verdict upon a question not raised at the trial, and which, if it had been raised, might have been settled definitively in the court below. We, therefore, consider the question of variance waived by the course taken at the trial. *Lawrence* vs. *Barker*, 5 *Wend.* 301.

Upon this part of the case the only question, then, is, whether the levy has given the demandant a right to the possession of the dower lands for any period of time. The appraisers, after describing it, certify that the rents and profits are worth fifty dollars per annum, and that "they have set off the whole of the above described estate by metes and bounds." The officer returns that he has given seizin and possession of the said tracts of land and buildings, to the creditor, and he returns the execution satisfied in part, for the sum of three hundred and sixty-four dollars for the land and buildings, and fifty dollars for the rents and profits.

It is evident that the officer supposed, if, indeed, he had any definite idea on the subject, that the creditor could hold the land only for one year; and it would seem that he supposed it might be held so long, at any rate, even if the life-estate of Mrs. Sawyer should determine before the end of that time. The land is appraised at the sum of fifty dollars per year, and is set off by metes and bounds. The officer has delivered seizin of it, and has returned the execution sat-

McConihe *v.* Sawyer.

isfied for the sum of fifty dollars.    This entitles the demand-
ant to the possession of the land for one year, if Mrs. Sawyer
should so long live.    We see no difference in principle be-
tween this case, and one where the land is set off to the cred-
itor to be held for so long a time that the annual rent would
extinguish the debt, if the tenant for life should live so long.
No one can complain that the creditor takes less than he might
have been legally entitled to, if the extent had been properly
made, for no one is injured thereby but himself.

But the tenant contends that an execution cannot be ex-
tended at all upon the rents of lands and tenements, unless it
appear that they cannot be divided and set off; and that this
levy is entirely void, because it does not appear that these
lands cannot be divided.    Whether the statute of July 4th,
1829, *N. H. Laws* 102, (*Ed. of* 1830,) was intended to ap-
ply to cases of this character, where the debtor owns only an
estate for life in the rents and profits of land; or whether it
apply to lands which, from their local situation and character,
are not susceptible of division, is the question raised by this
objection.    Where the debtor owns an estate in land in right
of his wife, the practice in this state has been to appraise the
annual value of the land, and set it off to be held by the
creditor, for a specified period, so long  that the debt may be
satisfied from the income.    And in Massachusetts it has been
held, that an execution  against a tenant for life may be ex-
tended either on the land or on the rents and profits. *Barber*
vs. *Root*, 10 *Mass.* 260; *Roberts* vs. *Whiting*, 16 *Mass.*
186.    The statute referred to provides, that when lands can-
not be divided and set out  by metes and bounds, the sheriff
shall extend the execution upon the rents thereof, and cause
the tenant to attorn; and if he refuse, the sheriff shall turn
him out of possession, and give seizin of the land to the cred-
itor, to hold until the judgment is satisfied.

Now, if the tenant in this case be correct, it must appear
that the land cannot be divided and set out, owing to its local
situation, or the execution cannot be extended upon the rents.

There would then be no mode in which to apply the estate of the debtor in satisfaction of the judgment, unless by sacrificing the rights of all other attaching creditors. If the land be set off without any limitation of time, the judgment may be satisfied before the determination of the life-estate, from the rents and profits, but still the creditor may hold the land as long as the estate for life continues. A subsequent attaching creditor would thus be deprived of the benefit of his attachment. This would conflict with the first section of the statute, which provides that all estate, real and personal, shall be charged with the payment of the debts of the owner. In a case like the present, then, there is no other mode in which the creditor can derive any benefit from the property of his debtor, than by an appraisal of its annual value ; and we think the demandant was entitled to the possession for one year from the date of the return upon the *levari facias,* provided Mrs. Sawyer lived so long ; and the quantity of the estate should have been so described in the return, that the possession should not extend beyond one year from the date.

The possession of the land by the tenant, subsequent to the attachment, proves nothing either way, and the evidence on that point was rightfully rejected. Nor would his possession from the date of the deed have been at all material. The question was, whether the deed were fraudulent. If so, it was fraudulent at its date, and possession under it cannot alter the case. It would have been easier, perhaps, for the demandant to satisfy the jury of the fraud, if possession had not followed the deed ; but, though the want of possession might have been indicative of fraud, the fact of possession does not tend to prove that the title under which it was acquired was *bona fide.*

*Judgment on the verdict for the tract first described.*