# REPORTS.

## ROCKINGHAM,

### DECEMBER TERM, A. D. 1850.

---

### KENDALL *v.* FITTS.

22   1
69  63

Possession of chattels by the vendor after sale, is, as to creditors, *primâ facie*, and, if unexplained, conclusive evidence of fraud. But what shall amount to a sufficient explanation, *quære?*

If fraud is *intended* in the sale, it is void both as to existing and subsequent creditors. If, however, there be no intentional fraud, the sale is void only as to existing debts and transactions.

Where W. made a wagon and put it into his brother's barn by his consent, and afterwards, while it was there, sold it to K., and both of them so informed the brother, who, by K.'s request, agreed that it might remain in the barn without any care or control of his, and, subsequently, W. removed it to the barn of M., by directions of K., but did not inform M. whose jt was, and while there it was attached by a creditor of W. — *Held*, that here was not such a possession on the part of the vendor as would warrant the Court in pronouncing it a fraud.

It is the practice in this State to allow securities, required by statute as preliminary to the service of writs, to be changed in the progress of the litigation, where no injury can be done to the parties, and substantial justice requires it. But where, by an order of Court, a bond or indemnity is given by a party as security for costs or otherwise, on account of some laches of the party, the security becomes the private property of the obligee and cannot be changed.

A replevin bond is a security required by statute, and may be changed.

If the verdict in an action of replevin be found for the plaintiff, damages should be assessed for the caption and detention ; if for the defendant, they should be assessed for the value of the property.

REPLEVIN, for a two-horse wagon. The defendant pleaded

that, at the time when the taking is alleged, the property of the wagon was in one Nathaniel R. West.   The plaintiff replied that the wagon was his property ; and on this issue was joined.

The defendant being a deputy sheriff, attached the property as the property of West, on a writ in favor of R. Kittredge, a creditor of West.

The plaintiff introduced evidence tending to prove that West built the wagon, and, for his own accommodation, put it into the barn of George M. West, his brother, by his permission, George having no care or custody of the same.   That the wagon remained in the barn about one month, when Nathaniel, having been requested by his brother George, to find some other place for it, by leave of Mrs. Mills, removed the wagon into her barn, without informing her that the plaintiff had any interest in the wagon ; and the defendant attached the same while it was thus standing in her barn.

There was evidence tending to show, that after the wagon had been in the barn of George M. West, as above stated, about two weeks, Nathaniel and Kendall the plaintiff, had some conversation relative to Kendall's purchasing the wagon ; that they went together to the barn where the wagon was, there concluded a bargain for the sale of the wagon to the plaintiff, for the sum of seventy dollars, and West gave him a bill of sale of the same ; that soon after the sale, Nathaniel and the plaintiff told George of the sale, and George, at the request of the plaintiff, consented that the wagon might remain in his barn, without any care or control on his part.   And the plaintiff, who was about going to Boston, agreed with Nathaniel, in case George should wish to use his barn, to find another place for it ; under which arrangement the wagon was sent to Mrs. Mills's barn.

There was no direct evidence of any delivery of the wagon to the plaintiff, nor of any change of possession from Nathaniel to the plaintiff before the attachment, except as above stated ; and the defendant contended that there was no sufficient delivery of the wagon as against the creditors of Nathaniel R. West.

The Court instructed the jury, that if they believed that the sale of the wagon to the plaintiff was *bonâ fide*, as between the

parties to it, and the parties went to the barn where the wagon was, for the purpose of completing the sale, they might lawfully presume that every thing had been done by the parties to the sale, which was necessary to render it legal and effectual. And that if it was sufficient between the parties, and the case was free from fraud, it would be sufficient against the creditors of West. The Court alluded to the case of a deed as analogous; where, if the parties are together for the purpose of completing deeds, and separate, supposing them complete, the jury, in the absence of fraud, may presume a delivery, though there be no direct evidence of the fact.

It appeared that William Greenough, a witness offered by the plaintiff, had signed, as surety, the replevin bond taken by the officer who replevied the wagon; that at the February term, 1848, the plaintiff, with a view to render said Greenough a competent witness, moved to file a new replevin bond, which motion was granted, and a new bond filed. The defendant objected to the witness as incompetent, and contended that the Court had no authority to cancel or surrender the first bond, without consent of the parties interested. The Court ruled the witness to be competent, and he was admitted to testify; to which the defendant excepted.

The jury found a verdict for the plaintiff upon the issue presented by the pleadings, but assessed no damages.

The defendant excepted to the instructions to the jury, and the ruling of the Court as above stated, and moved that the verdict might be set aside and a new trial granted, for the causes appearing in the case. And the questions arising upon the case were reserved and assigned to this Court for determination.

*Pillsbury*, for the defendant. 1. The Court erred in charging the jury " that if the sale was sufficient between the *parties*, it would be sufficient against the *creditors* of West." There is a wide and well-settled distinction between the two cases. *Butterfield* v. *Baker*, 5 Pick. 525; *Shumway* v. *Rutter*, 7 Pick. 56; 8 Pick. 421; *Hall* v. *French*, 9 N. H. Rep. 142.

The allusion by the Court to the case of a deed tended to mislead the jury.

2. The Court should have charged, that the testimony did not show a sufficient delivery and change of possession before the attachment, as against Nathaniel R. West's creditors. This important fact distinctly appears, to wit, that George M. West, the owner of the barn, was never the bailee nor keeper of the wagon for Nathaniel R. West, nor for the plaintiff. The case finds that George had no care, nor custody, nor control of the wagon, either before or after the sale. He was not the agent of Nathaniel, nor of the plaintiff. Nathaniel put the wagon into the barn for his own accommodation. The wagon, therefore, *at the time of the sale*, though in the barn of George, was in the possession of Nathaniel, as much as if he had himself owned the barn, and there was then no delivery, or removal, or change of possession. On the contrary, the plaintiff expressly left the custody of the wagon with Nathaniel R. West, and himself removed to Boston.

Now, while the wagon, after the pretended sale, remained in the barn of George, under the above circumstances, it was liable to attachment by Nathaniel's creditors, whatever might be held to be the law in cases of sales, where personal property at the time of sale is in the keeping of a third person, who is notified of the sale by the parties. Because, as already suggested, the wagon was not in the hands of a third party to be kept for the vendor. It was never in the keeping of George, and, therefore, the notice to him by the parties was of no effect as to creditors of Nathaniel.

The case is the same as if the wagon, at the time of the pretended sale, was standing in the barn of Nathaniel, and was permitted by him to remain there after the sale, at plaintiff's request. Therefore the authorities, if any, which go to sustain the sales of property in the hands of a bailee, who has been notified thereof by the parties, are not applicable to the case at bar.

Moreover, even if there was such a delivery of the wagon that creditors could not attach it while it remained in the barn of George, still, where Nathaniel, by permission of the plaintiff, afterwards took it into his own possession, and, obtaining Mrs.

Mills's permission, moved it into her barn, " *without informing her that the plaintiff had any interest in it,*" and apparently as the sole owner of it, he and the plaintiff were in law guilty of a fraud, which invalidated the sale as against creditors.

Nathaniel used the wagon in the same way after the pretended sale as before. All he did with it, before the sale, was to move it into George's barn for safe keeping; and after the sale he moved it for the same purpose into Mrs. Mills's barn, where the defendant attached it. Neither Mrs. Mills nor creditors had any reason to doubt but that it belonged to Nathaniel. Creditors could not have learned the pretended sale by inquiry of her, for Nathaniel had concealed that fact from her. And the presumption of law is, that he did it with the plaintiff's assent. *Trask* v. *Bowers,* 4 N. H. Rep. 314.

If Nathaniel was in fault for not disclosing the pretended sale to her, the plaintiff who intrusted him with the wagon ought to be the sufferer, rather than an innocent creditor. The legal effect of this removal was the same as if Nathaniel had removed it to his own barn, instead of Mrs. Mills's barn. No notoriety was in any way given to the sale. *Trask* v. *Bowers,* 4 N. H. Rep. 309; *Clark* v. *Morse,* 10 N. H. Rep. 240; *Coburn* v. *Pickering,* 3 N. H. Rep. 425.

3. William Greenough was not a competent witness. The bond was a contract between the sheriff and the obligors, which the Court could not rescind, nor order him to deliver it to a surety. The sheriff is responsible, and is therefore entitled to a voice in determining who shall be taken for sureties. He ought not to be compelled to risk the solvency of sureties, who are taken without his consent or knowledge. Courts now permit a change of indorsers of writs on the ground of a long practice in this State to do so. But we are not aware of any practice in this State which could justify a change of sureties on replevin bonds. *Pettingill* v. *McGregor,* 12 N. H. Rep. 189.

4. The verdict is imperfect and void, the jury having assessed no damages.

If the plaintiff in replevin prevails he shall have damages for the unlawful caption and detention. *Powell* v. *Hinsdale,* 5 Mass. Rep. 343; 1 Chit. Pl. 148.

1 *

---

Kendall *v.* Fitts.

---

Where some of the issues are found for the plaintiff, but the jury omit to assess damages, their verdict is void, and a *venire de novo* for the trial of those issues anew must be awarded. *Cement* v. *Lewis*, 3 Brod. & Bing. 297 ; *Holman* v. *Kingsbury*, 4 N. H. Rep. 104 ; *State* v. *Rollins*, 8 N. H. Rep. 568 ; *Walker* v. *Dewing*, 8 Pick. 520.

*C. H. Bell*, and *French*, for the plaintiff.

EASTMAN J. It will be perceived, on the reading of this case, that three questions are presented for consideration.

The first relates to the instructions of the Court to the jury in regard to the sale and delivery of the wagon from West to Kendall ; the second to the admissibility of Greenough as a witness, he being one of the sureties on the replevin bond ; and the third, to the form and validity of the verdict.

The first question is one frequently arising on the trial of cases, and presents no little difficulty in its determination.

It is well settled, that fraud in the sale and conveyance of property renders the sale void as to creditors, whether the sale is the result of an immoral, dishonest design between the parties, or is only attended with such circumstances as to render it merely a fraud in law. If it be an immoral, corrupt act, fraudulently intended, it is not only void as to creditors whose debts exist at the time of the pretended sale, but also as to all who may subsequently become creditors. *Smith* v. *Lowell*, 6 N. H. Rep. 67 ; *Carlisle* v. *Rich*, 8 N. H. Rep. 44 ; *Paul* v. *Crooker*, 8 N. H. Rep. 290 ; *McConihe* v. *Sawyer*, 12 N. H. Rep. 396 ; *Goodwin* v. *Hubbard*, 15 Mass. Rep. 215 ; *Jackson* v. *Myers*, 18 Johns. Rep. 425 ; *Damon* v. *Bryant*, 2 Pick. 411. If, however, there is no intention to commit a fraud, but the acts done are fraudulent in law merely, the sale is void only as to existing debts and transactions. *Parsons* v. *McKnight*, 8 N. H. Rep. 37 ; *Carlisle* v. *Rich*, 8 N. H. Rep. 50 ; *Smith* v. *Smith*, 11 N. H. Rep. 465 ; 2 Kent's Com. 442 ; *Reade* v. *Livingston*, 3 Johns. Ch. Rep. 481 ; *Sexton* v. *Wheaton*, 8 Wheaton's Rep. 229.

But the difficulty in determining inquiries of this kind, arises out of the vexed question as to what shall constitute fraud in law

Kendall *v.* Fitts.

and thus be directly passed upon by the judgment of the Court; and this, without any particular reference to its effect upon existing or subsequent creditors. It is said in *Coburn* v. *Pickering*, 3 N. H. Rep. 415, that when the question is, whether there is a trust in the sale it must be decided by the jury; but the trust being admitted or proved, the fraud is an inference of law which the Court is bound to pronounce. This doctrine is substantially reaffirmed in *Paul* v. *Crooker*, 8 N. H. Rep. 288, and in *French* v. *Hall*, 9 N. H. Rep. 145.

The decisions upon this question are quite conflicting, both in England and in this country. It seems, however, to be settled in this State, that possession of personal property by the vendor, after an absolute sale, is *primâ facie*, and, if unexplained, conclusive evidence of fraud; that the sale, in order to be valid against creditors, must be accompanied by an open, visible, and substantial change of the possession, such as indicates a change of the ownership; or that there must be a sufficient explanation why the possession was not changed. *Coburn* v. *Pickering*, 3 N. H. Rep. 415; *Paul* v. *Crooker*, 8 N. H. Rep. 288; *French* v. *Hall*, 9 N. H. Rep. 145; *Clarke* v. *Morse*, 10 N. H. Rep. 236. But what amounts to a "sufficient explanation," where the possession is not changed, has not, as we can discover, been definitely determined; although it has been decided, as above stated, in *Coburn* v. *Pickering*, that any trust attending the sale, is a fraud in law; and also that possession retained by the vendor under a lease from the vendee, after the sale, is of itself conclusive evidence of fraud. Should we, under the decisions in our own reports, attempt to lay down any rule upon this subject, it might, perhaps, be that all agreements or bargains, express or implied, which entered into the contract of sale, whereby the vendor should retain possession of the property for the advantage of either party, and not for the accommodation of the vendee; and all agreements and contracts to retain possession, made directly after the sale, either without changing the possession, or immediately after changing it, should be regarded as conclusive evidence of fraud. *Trask* v. *Bowers*, 4 N. H. Rep. 309; *Parker* v. *Pattee*, 4 N. H. Rep. 176, and cases before cited.

Kendall *v.* Fitts.

In the case before us, it appears that soon after the alleged sale took place between the plaintiff and Nathaniel West, that the parties informed George M. West, in whose barn the wagon was, of the sale; and that George, at the request of the plaintiff, consented that the wagon might remain in his barn, without any care or control on his part. Nathaniel assumed no ownership over it after this. His removal of the wagon to Mrs. Mills's barn was in pursuance of an arrangement with the plaintiff, in no way connected with the terms of sale. What he did was as the servant of the plaintiff. At least we cannot look upon his conduct, in regard to the wagon, after the sale, in such an aspect, as to warrant us in drawing the conclusion, that here was a fraud in law, which the Court is bound to find.

The instructions to be given to juries on the trial of cases of this description, must depend upon the facts and circumstances presented at the time. We think the Court went rather too far in the views expressed to the jury on this point, especially in the comparison between the facts in this case and the conduct of parties in the passing and delivery of title deeds. And the jury may have been misled by these suggestions. But, inasmuch as the verdict is to be set aside upon another point, it is not necessary to pursue these inquiries any further.

The second question in the case relates to the competency of the witness Greenough. It appears that he signed the original replevin bond given at the commencement of the action, and, at the February term of the Common Pleas, 1848, which was the term previous to the trial of the case, permission was given to file a new replevin bond in place of the one already taken. And it is contended that this could not be done without the consent of the parties interested; and that not being obtained, Greenough is still holden on the original bond, and therefore incompetent as a witness.

A replevin bond is one that is required by statute, and must be furnished before the writ of replevin can be legally served. It is given to the sheriff of the county and not to the deputy or person serving the writ, unless the sheriff himself shall serve it. Its condition is, that the plaintiff shall prosecute his suit, and pay all such damages and costs as shall be awarded against him; and

Kendall *v.* Fitts.

it must be signed by sufficient sureties. Rev. Stat. ch. 204, § 5. The statute also provides, that every replevin bond shall be deemed to be given for the benefit of all persons attaching the property. Rev. Stat. ch. 184, § 6. And it is further provided in said chapter 184, that an action of debt may be maintained upon said bond, in the name of the sheriff, for the benefit of those interested. The bond, then, although given to the sheriff, is not for his personal security, but for the benefit of those who may be interested in trying the title to the property. It is an instrument prescribed by statute, and, by our practice, the sureties can be changed by order of the Court in the same manner as indorsers of writs are changed.

The object of the securities is, to protect the parties litigating under certain circumstances from loss; and so long as the Court see that the security is in no way impaired, nor delay caused, the design of the law is not defeated by permitting the change. In all such changes, care is always taken that the new sureties shall be abundantly good to respond any amount that may be found against them in the action. In the haste and inexperience of doing business, it is no uncommon thing for the very witness, upon whose testimony a party's action may mainly depend, to indorse a writ or sign a bond required by statute; and not to permit a change in such cases, would oftentimes prevent justice from being done.

Where, in the progress of litigation, a bond or indemnity is given by the order of Court as security for costs, or on account of some laches on the part of the person upon whom the order is made, the security becomes the private property of the obligee, and the Court will not interfere to change it. But where the security is such as is required by statute, before the suit is instituted, it is considered as under the direction of the Court; and it is the invariable practice to permit a party to change that security, if, by so doing, no rights are to be prejudiced.

The last exception taken by the defendant is fatal. No judgment can, by law, be rendered upon the verdict in the form in which it is returned. In the action of replevin, damages should always be assessed, whether the verdict be for the plain-

tiff or defendant. If the verdict be for the defendant, the damages should be for the value of the property taken ; and, in case they be not paid, together with the costs of suit, resort is to be had to the replevin bond. If the verdict be for the plaintiff, the damages assessed should be for the caption and detention of the property. 2 Saunders on Pl. and Ev. 760; 4 Term Rep. 504; 1 Chitty's Pl. 148; 1 Saund. 347, n.1; *Bell* v. *Bartlett*, 7 N. H. Rep. 178.

The verdict, for the reasons stated, must be set aside and a

*New trial granted.*