## SMITH & a. v. GODFREY.

It is a well established general principle that the validity of a contract is to be determined by the law of the place where the contract is made.

No State or nation is bound to recognize or enforce any contracts which are injurious to its own interests or to those of its citizens.

The laws of a country have no binding force beyond its territorial limits, and their authority is admitted in other States not *ex proprio vigore*, but *ex comitate*.

The price of goods sold and delivered in a State where such sale is legal, and nothing remains to be done by the vendor to complete the transaction, and he is not in any way to be further connected with it, can be recovered in another State where such sale would be illegal. *Aliter*, if it be an ingredient in the contract that the goods shall be illegally sold, or that the seller shall do any act to assist or facilitate the illegal sale, or if the goods are to be delivered in the place where the sale is prohibited.

Bare knowledge on the part of the vendor of goods that they are to be sold in another State, contrary to the laws of such State, will not make the sale of the same illegal in the State where the sale is not prohibited.

Where A. sold and delivered spirituous liquors to B. in Massachusetts, and such sale was there legal; upon an action brought for the price, in this State, where such sales are illegal—*held*, that the bare knowledge on the part of the vendor that the purchaser intended to sell them in this State contrary to law, was not a defence to the action.

ASSUMPSIT, upon an account annexed to the writ, which was for spirituous liquors sold in Boston, Massachusetts.

The defendant proposed to show that the liquors were sold in this State, in violation of our law, and that the plaintiffs knew when they were purchased by the defendant that they were to be thus sold.

The court ruled the evidence incompetent as showing any defence to the action. And a verdict was thereupon taken by consent for the plaintiffs, upon which judgment was to be entered, or the same to be set aside and a new trial granted, according to the opinion of this court upon the correctness of the ruling.

*McMurphy*, for the defendant.

Our positions are as follows :

I.   A contract for the sale of any article by a citizen of one State or nation to a citizen or subject of another State or nation, with a knowledge that such article is to be sold or used for an illegal purpose, and in violation of the laws of such other State or nation, cannot be enforced in the State whose laws are intended to be violated. 2 Kent's Com. 454; Chitty on Con. 422; 1 Black. Com. 445.; Story's Conflict of Laws, 377, 380; 372; Chitty on Con. 694, 695; 2 Kent's Com. 458.

II.   No people are bound or ought to hold valid in their courts of justice any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law. 2 Kent's Com. 458; Story's Conflict of Laws, 370, 371; *Greenwood* v. *Curtis*, 6 Mass. Rep. 376, 379; *Blanchard* v. *Russell*, 13 Mass. Rep. 1 to 6.

Such contracts, though valid by the laws of the place where made, are deemed nullities in every country or State unjustly affected by them. Story's Con. Laws, 372.

III.   Contracts made in violation of the statute for the protection of the public, are always void. *Favor* v. *Philbrick*, 7 N. H. Rep. 326. Sale of tickets in a lottery not authorised by the laws of this State or of the United States being illegal, no action can be maintained against a person in this State to whom tickets were sent for sale, to recover money received on such sale. *Udall* v. *Metcalf*, 5 N. H. Rep. 396.

*Wells & Bacon*, for the plaintiffs.

We contend : I.   That the case shows that the purchase and sale of the goods were made and completed in Boston, in the State of Massachusetts ; and that the liability having been thus lawfully fixed, cannot be defeated or changed by any subsequent act of the defendant.

II.   The penal laws of a State can have no force beyond its limits ; and to prevent a recovery here, in a case of this

kind, the sale must have been within this State, and against our penal statutes. The whole contract between the parties was perfected in Massachusetts. The plaintiffs were prosecuting a business in Boston, which was there legal, and because illegal here, the contract made there cannot be void.

EASTMAN, J. There is, perhaps, no general principle of law better established, than that the validity of a contract is to be decided by the law of the place where the contract is made. If valid there, it is valid elsewhere, but if void or illegal by the law of the place where made, it is void everywhere. This proposition, as a general one, is universally acknowledged and recognized. The rule, it is said, is founded not merely in the convenience but in the necessities of nations and States; for otherwise it would be impracticable for them to carry on an extensive intercourse and commerce with each other. The whole system of agencies, of purchases and sales, of mutual credits, and of transfers of negotiable instruments, rests on this foundation; and in sustaining the principle there seems to be a unanimous consent of all courts and jurists, foreign and domestic. Story's Con. Laws, § 242; 2 Kent's Com. 454; *Dyer* v. *Hunt*, 5 N. H. Rep. 401; *Douglass* v. *Oldham*, 6 N. H. Rep. 150; *Bliss* v. *Houghton*, 13 N. H. Rep. 126; *French* v. *Hall*, 9 N. H. Rep. 137; *Sessions* v. *Little*, 9 N. H. Rep. 271; *Bank U. S.* v. *Donally*, 8 Peters, 361; *Wilcox* v. *Hunt*, 13 Peters, 378; *Pearsall* v. *Dwight*, 2 Mass. Rep. 88; *Smith* v. *Mead*, 3 Conn. Rep. 253; *Trimby* v. *Vignier*, 1 Bing. N. C. 151; *Van Schaick* v. *Edwards*, 2 Johns. Cases, 355; *Alves* v. *Hodgdon*, 7 Term, 237; *Burrows* v. *Jemime*, 2 Str. 732.

But there are some exceptions to this rule; and among them is this, that no nation is bound to recognize or enforce any contracts which are injurious to its own interests, or to those of its own citizens, or which are in fraud of its laws. The laws of a country have no binding force beyond its territorial limits, and their authority is admitted in other States,

not *ex proprio vigore*, but *ex comitate*, and every community must judge for itself how far this comity shall be permitted to interfere with its domestic interests and policy. Story's Con. Laws, § 244; 2 Kent's Com. 457; *Andrews* v. *Pond*, 13 Peters, 65.

Chancellor *Kent* says: no people are bound to enforce or hold valid in their courts of justice any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or violates a public law. 2 Kent's Com. 458.

Story uses this language. "Contracts which are in evasion or fraud of the laws of a country, or of the rights or duties of its subjects, contracts against good morals, or against religion, or against public rights, and contracts opposed to the national policy or national institutions, are deemed nullities in every country affected by such considerations." Story's Con. Law, § 244. And these views are sustained by the following, among other authorities. *Whiston* v. *Stodder*, 8 Martin, 95; *Greenwood* v. *Curtis*, 6 Mass. Rep. 358; *Blanchard* v. *Russell*, 13 Mass. Rep. 1; *De Sobrey* v. *De Laistre*, 2 Harr. & Johns. 193; *Thrasher* v. *Evertt*, 3 Gill & Johns. 234; *Ohio Ins. Co.* v. *Edmonson*, 5 Louis. Rep. 295.

What shall be held to be injurious to the rights of a State or its citizens, or against public morals, or in evasion or fraud of the laws of a country, and how far courts shall go in sustaining this exception to the general rule which all admit to be so almost universal and important in its application, is not in all cases so clear.

In *Holman* v. *Johnson*, Cowp. 341, which is a leading case upon the question, goods were sold in France by a Frenchman to an Englishman, for the known purpose of being smuggled into England, and it was held that the Frenchman could maintain a suit in England for the price of the goods, upon the ground that the sale was complete in France, and that the vendor had no connection with the smuggling transaction. The contract, said the court, was

complete, and nothing was left to be done. The seller, in-deed, knew what the buyer was going to do with the goods; but he had no concern with the transaction itself. A similar decision was made in *Pellecat* v. *Augell*, 2 Crompton, Mee-son & Roscoe's Rep. 311. These cases both arose out of contracts made for the sale of goods intended as a breach of the revenue laws, and although in the latter case some stress seems to have been laid upon that fact, still the opin-ion of the court did not rest upon that ground.

In *Territt & a.* v. *Bartlett*, 21 Vt. Rep. 189, which was an action growing out of the sale of spirituous liquors, begun in New York, but completed in Vermont, *Redfield*, J., in speaking of the case of *Holman* v. *Johnson*, says he should have no doubt that an action would lie in the courts of Vermont, where the sale and delivery were both made in another State, and the seller did nothing to promote the illegal object except what was necessary to pursue his own lawful business, in the foreign State, although he might have known the illegal purpose contemplated by the vendee. See, also, to the same point, *Merchants Bank* v. *Spalding*, 12 Barb. Sup. Ct. Rep. 302.

The doctrine of these and other cases is, that the mere knowledge of the illegal purpose for which goods are pur-chased will not affect the validity of the contract of sale in the country to which they are to be taken and sold. If the goods are sold and delivered in the government where the contract is made, and the sale there would be legal, and nothing remains to be done by the vendor to complete the transaction, and he is not in any way to be further connected with it, an action can be maintained for the recovery of the price. But if it enters at all as an ingredient into the con-tract between the parties that the goods shall be illegally sold; or that the seller shall do some act to assist or facili-tate the illegal sale, the contract will not be enforced. Or if the goods are sold to be delivered in the place where the sale is prohibited, the purchaser will not be held liable. The

sale in such instance would not be complete in the foreign State, and the contract being repugnant to the law of the country which made the prohibition, could not there be enforced.

The principle, as we have above stated it, will not, we think, be found to be controverted by any well considered case. It has been animadverted upon by some elementary writers, but they all admit, we believe, that such is the law. There are cases which hold that where a sale is made in a State or country of goods, to be used in the same country in violation of law, and the seller is aware of the illegal purpose at the time, he cannot enforce his contract in the courts of that country. But these authorities do not extend to contracts made in a foreign State, where the sale and use is legal.

It may be observed, also, that, as a general rule, where goods have been sold and delivered, the vendor has no longer any control over them; and although the purchaser may, at the time of the purchase, intend to sell them in another State in violation of the law of that State, yet he may subsequently change his purpose, and the goods, notwithstanding the original intention, may be disposed of elsewhere, in strict conformity with law.

With us the principle is established that the consideration to be paid for spirituous liquors sold without license cannot be recovered. The sale being prohibited by statute, and the vendor being liable to a criminal prosecution for the selling, the traffic is made illegal, and contracts in respect to it cannot be enforced. Wherever an indictment can be sustained for the illegal sale, there the price cannot be recovered. *Pray* v. *Burbank,* 10 N. H. Rep. 377; *Caldwell* v. *Wentworth,* 14 N. H. Rep. 431; *Lewis* v. *Welch,* 14 N. H. Rep. 294.

But these laws prohibiting the sale of liquors in this State, cannot extend to independent acts done beyond our limits. These plaintiffs made this sale in Massachusetts,

Smith *v.* Godfrey.

where they had a right to make it by the laws of that State. It was there a lawful business, and whatever difference of opinion may exist in regard to the traffic, they had a right to pursue the business if they saw fit. If they had been indicted here for the sale, and had appeared to defend the indictment, it is plain that, unless the government could show them in some way connected with the transaction, so as to make out the sale to have been, in law, in this State, no conviction could be had. There is no pretence that they could be indicted for sales made by the defendant himself, in which they had no agency; and so long as the whole transaction by the plaintiffs was completed in Massachusetts, and they had no connection with the matter except to sell and deliver the spirit in that State, it is very clear that no indictment could be sustained against them in this State for that act, whatever may have been their knowledge as to the defendant's intentions. And if an indictment could not be sustained, and no penalty enforced against them, then there would be a failure to show the contract illegal and the case would not come within our principle of illegal sales; the test of an illegal sale being the liability of the vendor to the penalty of the statute.

The case finds this sale to have been completed in Massachusetts, and there is nothing showing the plaintiffs to have been in any way connected with the sales in this State. There is nothing, in fact, that shows that they had any knowledge of the intention of the defendant; but the proposition to show knowledge as a defence was the question upon the trial, and we have so treated it; and we are of opinion that the ruling of the court in excluding the evidence was correct, and that there should be,

*Judgment on the verdict.*