ALBANY,<br>
Jan. 1812.<br>
GLEN<br>
v.<br>
HODGE.

---

## GLEN *against* HODGES.

THIS was an action of trespass *vi et armis,* for taking the plaintiff's negro man slave out of the plaintiff's possession, and carrying him away. The declaration alleged, that the defendant, on the 31st of *July,* 1810, with force and arms, at a place called *Rutland,* to wit, at *Albany,* in the county of *Albany,* seized, took, and carried away, a certain negro man slave, called *Harry,* the property of the plaintiff, of the value of 300 dollars, &c.

The defendant pleaded, 1. Not guilty; 2. That the negro man lived in *Rutland,* in the state of *Vermont,* four years preceding the supposed trespass, and was, by the people of that place, reputed and considered a freeman; and that the defendant, and his partner in trade, sold the said negro man goods on credit, for which he became indebted to them; and that, before the supposed trespass, they took out an attachment against the said negro for the said debt, which attachment was duly issued by a justice of the peace for *Rutland,* and delivered to a constable of the same place, to be served and returned, and that by virtue of the said writ of attachment, the constable arrested the negro, and commit-

A. the owner of a slave, in this state, went into the state of *Vermont,* to reclaim his slave, who had run away from the service of his master, and resided there as a freeman. A. having taken the slave, while he was in his possession, B. took out an attachment against the slave, for a debt, on which the slave was arrested by an officer, and forcibly taken out of the possession of his master, and imprisoned.

A. brought an action of *trespass* against B. in this state, for taking away his slave, and it was held, that under the law of the *United States,* A. had a right to reclaim the slave, as a fugitive from service, and that as the slave was incapable of contracting a debt, the attachment was illegal and void, and no justification to B. who was guilty of a trespass, for which an action would lie in this state. For injuries to personal property, or personal rights, which are of a transitory nature, an action may be brought wherever the defendant is to be found.

ted him to the gaol of *Rutland* county, according to the exigency of the said writ ; which arrest, taking, and imprisonment of the said negro, is the same trespass alleged in the plaintiff's declaration, &c. To the second plea, the plaintiff replied, that, before the taking and arresting the said negro, by virtue of such writ of attachment, the defendant had notice that the said negro was the slave of the plaintiff, &c.

The cause was tried at the *Albany* circuit, in *October*, 1811, before Mr. Justice *Van Ness.*

The plaintiff proved that, in *February*, 1808, he bought of one *Deoffendorf*, a negro man, named *Harry*, who, at the time of such purchase, was a runaway, and had been gone about two years. *Deoffendorf* went with the son of the plaintiff, who had a power from his father, to take the negro in the state of *Vermont*, and they found him in *Rutland.* The negro was taken by *Jacob S. Glen*, in behalf of his father, the plaintiff; and while the negro was in the custody of the plaintiff's son, a constable came and arrested him, by virtue of a writ of attachment, at the suit of the defendant and his partner. The son of the plaintiff claimed the negro as a slave; but the constable took him by force, carried him away, and committed him to the gaol of the county.

It was proved, that the day before the negro was taken out of the possession of the son of the plaintiff, the defendant knew that he was going away, and took out the writ of attachment in consequence; that the negro had resided in *Vermont* since 1805, and, for some months preceding, had lived near the defendant.

The plaintiff gave in evidence the bill of sale of the slave to him from *Deoffendorf*, and also a power of attorney to his son, to take the slave.

The defendant gave in evidence a copy of the writ of attachment and return thereon, and of a record of a judgment recovered in pursuance thereof against the negro *Harry*, in favour of the defendant and his partner, for 13 dollars and 37 cents, the 21st *July*, 1810, before a justice of the peace, which were admitted by the plaintiff to be authentic evidence of the proceedings mentioned in them.

When the agent of *Glen* first took the slave, he said it was for *theft;* but, as soon as he had him secured, he declared that he had taken him as a *slave;* and held him as such, until he was taken away by the constable.

It was admitted, that by the constitution and laws of *Vermont*, slavery was wholly prohibited.(*a*)

The judge declared his opinion on the law and the evidence, that the plaintiff was not entitled to recover, and the plaintiff submitted to a nonsuit, with liberty to move the court to set it aside, and to grant a new trial.

*Paine*, for the plaintiff.

*Van Vechten*, contra.

*Per Curiam.* There is no doubt that the negro was the property of the plaintiff, and had run away from service into *Vermont.* He was held to service or labour under the laws of this state, when he escaped, and the escape did not discharge him, but the master was entitled to reclaim him in the state to which he had fled. This is according to a provision in the constitution of the *United States*, (art. 4. s. 2.) and the act of congress of the 12th of *February*, 1793, (*Laws United States*, vol. 2. 165.) prescribes the mode of reclaiming the slave. It not only gives a penalty against any person who shall knowingly and willingly obstruct the claimant in the act of reclaiming the fugitive, but saves to such claimant "his right of action for any injury" he may receive by such obstruction. The plaintiff was, therefore, in the exercise of a right when he proceeded to reclaim the slave, and the single question is, whether the defendant is not responsible in trespass, for rescuing the slave, though he did it under the form and colour of an attachment for a debt alleged to have been contracted with him by the slave. The negro, being a slave, was incapable of contracting, so as to impair the right of his master to reclaim him. A contrary doctrine would be intolerable, so far as respects the security of the owner's right, and would go to defeat the provision altogether. The defendant, therefore, contracted with the negro, and sued out the attachment, at his peril. It was a fraud upon the master's right. The fact being established that the negro was a fugitive slave, the attachment was no justification to the party who caused it to be

(*a*) The 1st article of the *Declaration of Rights*, prefixed to the constitution of *Vermont*, adopted the 9th of *July*, 1793, declares that "no male person born in this country, or brought over from sea, ought to be holden, by law, to serve any person as a servant, slave, or apprentice, after he arrives to the age of 21 years; nor female, in like manner, after she arrives to the age of 18 years, unless they are bound by their own consent," &c.

ALBANY,
Jan. 1812.

sued out. This must have been so adjudged, if the point had been raised in *Vermont*, because the entering into a contract with such slave, and the endeavour to hold him under that contract, contravened the law of the *United States*, which protects the master or owner of fugitive slaves in all his rights, as such owner. If the slave had committed any public offence in *Vermont*, and had been detained under the authority of the government of that state, the case would have been different, and the right of the master must have yielded to a paramount right. But the interference of any private individual, by suing out process, or otherwise, under the pretence of a debt contracted by the negro, was an act illegal and void.

There can be no objection to an action of trespass being brought here, though the act happened out of the state. The injury concerned the rights of personal property. The act was not a public offence, nor did it touch the rights of real property. It was of a transitory nature; and it is an established principle that such personal actions may be laid where the defendant is to be found—*sequuntur forum rei*. This was the doctrine in the cases of *Mostyn v. Fabrigas*, (*Cowp.* 161.) and of *Rafael v. Verelst*, (2 *Black. Rep.* 1055.)

A new trial is, therefore, awarded, with costs to abide the event.

Motion granted.