# CIRCUIT COURT, U. S.

## CORYDON, Nov. 3, 1818.

### In the Matter of Susan, a Woman of Colour, and Fugitive Slave.

The 4th art. sec. 2. of the constitution confers power upon congress, and the law of congress in pursuance of it in relation to fugitives, is constitutional, and is exclusive of state laws as to the objects they embrace.

*Benjamin Park, J.*—Susan, a person of colour, being brought before me, upon a warrant issued upon the complaint of her master John L. Chasteen, a citizen of the state of Kentucky, who claims her as a fugitive from labour;—it appeared that cognizance of the case had been taken under a law of this state, which provides, that a non-resident, having a claim to the service of any person in this state, shall procure a warrant from a judge, or a justice of the peace, who being satisfied of the validity of the claim, shall certify the case to the next term of the circuit court for the county, where a trial by jury shall be had in the ordinary mode; and upon verdict and judgment being obtained against the servant, the court shall grant a certificate, authorizing the claimant to remove the servant out of the state. That the claim of Chasteen having been asserted under this law, the case was certified to the circuit court, for the county of Jefferson, and being dismissed by the claimant, a bill in equity was filed, and an injunction obtained against him, for the purpose of investigating the claim of the girl to her freedom.—The claim, however, being brought before me, the case pending before the state court was dismissed, and a motion submitted for the dismissal of the warrant, upon the ground,

"That the 3d clause of the 2d section of the 4th article of the constitution of the United States, confers no authority on congress on the subject of fugitive slaves; and, therefore, that the act of congress (Feb. 12, 1792) is unconstitutional."

But admitting the constitutionality of that law, it was contended that the several states have an authority, concurrent with congress, to legislate on this subject; and therefore, that any procedure under the law of this state,

(December 30, 1816,) already mentioned, operates to the exclusion of any authority derived from the act of congress.

CORYDON,
Nov. 3, 1818.

In the Matter of Susan, a woman of colour, and fugitive slave.

Prior to the adoption of the constitution of the United States, the inhabitants of the states where slavery prevailed, were exposed to so many inconveniences from the escaping of their slaves into other states, where slavery was not tolerated, from the different views entertained of the subject, it was thought unnecessary or improper to aid in their restoration ; and in the states, where coloured persons were free, persons escaping from the service of their masters, became emancipated by their laws. To correct these abuses, prevent collisions between the several states, to secure the enjoyment of property according to their laws, respectively, and to enable the owners of slaves, fleeing from their service, to reclaim them, the constitution provides, that no person held to labour in one state, under the laws thereof, escaping into another, shall, in consequence of any law or regulation therein, be discharged from such service or labour, but shall be delivered up on the claim of the party to whom such service or labour may be due ; and in conformity to this provision of the constitution, congress accordingly enacted that any person held to service or labour, in any state, according to the laws thereof, escaping into another state, may be seized by the person to whom such service or labour is due, and taken before a judge of the United States, or any magistrate of a county, &c.; who, upon proof, to his satisfaction, that the person so seized, doth, under the laws of the state from which he or she fled, owe service or labour to the claimant, shall give a certificate thereof, and which shall be a sufficient warrant to remove back the fugitive to the state from which he or she escaped.

This case has probably furnished the first occasion on which the validity of this law has been questioned, which is cited by judge Tucker in his commentary on the constitution of the United States (Tucker's Black. 366.) and by the supreme court of the state of New York, (in, I believe, Glen. v. Hodges, 9 Johns. Rep. 67.) with approbation, and which has been recognized in many cases before the judges and courts of this country ; no reason has been suggested to influence a deviation from this current of

CORYDON,
Nov. 3, 1818.

In the Mat-
ter of Susan, a
woman of col-
our, and fugi-
tive slave.

authority; and the case, as regards this point, is consider-
ed clear of doubt or difficulty.

Before the passage of the act of congress, owners of
slaves escaping into other states must have resorted to the
laws of these states for the recovery of their property.
They had no other means of redress; but when, in con-
formity to the constitutional provision, congress legislated
and provided a remedy commensurate with the object in
view, it superseded any state regulation then existing, or
that might thereafter be adopted.  The idea of another
concurrent power in the federal and state governments ap-
pears to have been carried too far in the argument, and if
admitted, would be pregnant with the greatest mischief,
and the source of perpetual collisions between the states
and the general government.  The cases of taxation, &c.
are not apposite.  A concurrent power may be exerted,
on the same subject, for different purposes, but not for
the attainment of the same end.  If laws of the same
tenor and effect are enacted, one must be useless; but if
they differ in the remedy, and in the mode of obtaining
it, their relative authority must be determined from a re-
currence to the source from whence they originated.  In
the formation of the constitution of the United States,
the states parted with this authority, and devolved it upon
the general government, and it is a privilege secured to
the people of the states respectively, to seek redress be-
fore the tribunals, and in the mode designated by con-
gress.

By the law of congress, a judge, or magistrate, is com-
petent to decide, finally, the service of the owner; but by
the law of the state, if satisfied of the validity of the claim,
he is to certify the case to the circuit court.  The former
case is to be determined in a summary way; according
to the latter, by a court aided by a jury : by the former,
there is a discretionary power as to the reception of evi-
dence in support of the claim; by the latter, the cause
must be conducted as is usual in suits at common law,
and it is unnecessary to inquire whether one or the other
is best calculated to promote the ends of justice.  It is suf-
ficient that congress have prescribed the mode, and the
motion must, therefore, be overruled.