## MUSSINA a. BELDEN.

*Supreme Court, First District; Special Term, February*, 1858.

JURISDICTION OF ACTION RESPECTING LANDS WITHOUT THE STATE. —DEFENCE OF FORMER JUDGMENT.

The Supreme Court of this State have jurisdiction of an action for a fraudulent conspiracy, formed by the defendants in another State, to divest the plaintiff

of his title to lands in that State, when the relief sought is damages for the wrong, and an accounting and payment of rents and profits.

It is not necessary, in such case, that the defendants should be residents of this State, to subject them to the jurisdiction of the court. The court acquires jurisdiction by the service of process upon them within the State, however brief may be their sojourn here.

Section 123 of the Code—providing that an action relating to lands is local, and can only be tried in the county where the lands are situated—is inapplicable when the lands in question are situated without the State.

The rule, that full faith and credit is to be given the judicial proceedings of courts of sister States, is not to be held to preclude a party from impeaching collaterally, on the ground of fraud, a decree rendered by a court of another State, in an action not between the same parties.

Demurrer to complaint.

The facts stated by the complaint were, briefly, that a contract was made at Brownsville, in the State of Texas, in December, 1848, between Jacob Mussina, one of the plaintiffs, and the defendants, Stillman and Belden, by which they were jointly to purchase and hold certain lands, constituting the town of Brownsville, on the left bank of the Rio Grande.

The complaint then proceeds to state that the plaintiffs, Simon and Jacob Mussina, were jointly interested in such contract, and the lands purchased in pursuance thereof, as were then also the defendants Belden, Stillman, and Alling ; that the defendants Basse and Horde were the attorneys of the parties in relation to such contract, and the purchasers of land under the same ; that in December, 1849, the defendants entered into a conspiracy to defraud the plaintiffs out of their interests in said lands, and rights under the contract; that, in pursuance of such conspiracy, they made divers conveyances, instituted legal proceedings, and took various fraudulent steps, whereby the plaintiffs' title was impaired, their lands depreciated in value, and they thereby lost the same ; that, as a part of such conspiracy and fraud, in the year 1849, a suit was instituted in the United States District Court for the District of Texas, by one Don Rafael Garcia Cavazos and wife, against the parties to this action, for the recovery of the lands thus purchased under said contract, and that such proceedings were had therein ; that in January, 1852, a decree was rendered against the parties herein, whereby their title to said lands was declared illegal and invalid, and they were perpetually enjoined from setting it up ; that such decree was ob-

tained by the fraudulent acts and contrivances of the defendants, which were fully stated in the complaint, and with the intention to deprive them of their interests in said lands, and their title thereto.

The plaintiffs' damages were laid at five hundred thousand dollars, and the demand of relief was as follows:

" Wherefore the plaintiffs demand judgment for the damages which they have sustained, and that the defendants may be required to come to an account with the plaintiffs, of and concerning all moneys or things by them or either of them received, an account of the sales of the lands thus jointly owned by the parties to this suit, and of and concerning all the rents and profits of said lands, and of and concerning the rents mentioned in the complaint, as due from the United States."

The defendants, Stillman, Belden, and Alling, demurred to the complaint, and assigned as grounds:

"*First*, That this court has no jurisdiction of the subject of the action.

"*Second*, That the facts stated in the complaint are not sufficient to constitute a cause of action."

*Clark & Voorhies*, in support of the demurrer.—*First*, That the court has not jurisdiction. It is manifest that the plaintiffs seek to draw into the jurisdiction of the courts of this State, a litigation relative to lands situated in Texas, and which is solely cognizable by the courts of that State. The gravamen of the complaint is the *divestiture of title* to, and *depreciation* of lands in Texas by means of an alleged conspiracy, concocted and carried out there, by parties who are not, so far as appears on the pleadings, residents of this State. It matters not whether the relief asked is a reconveyance of the property of which the plaintiffs complain they have been divested, or whether they waive such relief and ask for damages, for the divestiture and depreciation in value. In either case, the action is in the nature of a real action, and is not transitory. It requires an investigation of, and adjudication upon, the titles and injury to lands in a foreign country. 1. A court of law will not entertain an action for injury to land situated out of the jurisdiction. Although the claim is for damages only, yet such an action is local. (Watts *v.* Kinney, 6 *Hill*, 82, and cases there cited; *Story's Confl. of Laws*, §§ 554,

555; Ring v. McCoun, 3 *Sandf.*, 524.) 2. If this is deemed an action on the equity side of the court, then we say there is no precedent for the jurisdiction. The class of cases in which courts of equity have taken jurisdiction of suits affecting lands in other States or countries, is where bills have been filed for the specific performance of contracts for the sale of such lands, or where they have been held in trust. In those cases they have assumed jurisdiction on the ground that the decree was *in personam*, and the parties were *residents* of the State or country in which the suit was brought. (2 *Story's Eq. Juris.*, §§ 743, 744, 899, 900; *Story's Confl. of Laws*, 551–555.) And in England the following limitations to the jurisdiction have been recognized: (*a.*) That the defendants should be residents in England. (*b.*) That the land, though beyond the jurisdiction, should be within the empire or its dependencies. (*c.*) That the interposition of the court be *necessary* to the ends of justice. (*d.*) That there be no court of competent authority within the jurisdiction (2 *Spence's Eq. Jurisd.*, 7, 10). It does not appear from the complaint in this action that the defendants are "*residents* of this State*," or that "the interposition of this court is necessary to the ends of justice," or that the courts of Texas are not competent to do justice between the parties. When the plaintiff entered into a Texas partnership in Texas land claims, he impliedly submitted himself to the Texas laws and tribunals. This attempt to bring those titles before the courts of another State for adjudication, either directly or indirectly, is not to be favored (Mussina v. Alling, 11 *Louis. R.*, 568).

*Second*, That the complaint does not state facts sufficient to constitute a cause of action. I. If the complaint states facts sufficient to authorize the courts of Texas to grant relief, still it shows no cause of action here.

II. It appears on the face of the complaint that a suit was heretofore commenced in the United States District Court for the District of Texas, in which Cavazos and wife were complainants, and all the parties to this suit were defendants, and a decree made establishing the title of the complainants to all the lands involved in this action, and perpetually enjoining the defendants therein from questioning the same. That decree is binding and conclusive upon the parties to this action, so far as the title to these lands is concerned (1 *Greenl. Ev.*, § 522, &c.).

It establishes that they never had any title, and consequently that the plaintiffs in this action could have sustained no injury by reason of the alleged wrongful acts set forth in the complaint. It is no answer to say the decree was rendered in a manner to prevent the defendants from appealing. By the Constitution of the United States (art. 4, § 1), " full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." The remedy of the plaintiffs, if any fraud has been practised in obtaining that decree, is to apply to the courts of Texas to set it aside. So long as it stands, it is conclusive upon them. (Bicknell *v.* Field, 8 *Paige*, 445 ; McRae *v.* Mattorn, 13 *Pick.*, 53 ; Peck *v.* Woodbridge, 3 *Day*, 30). The judgments of the courts of another State cannot be impeached or inquired into in an action of the nature of this. (Smith *v.* Lewis, 3 *Johns.*, 168 ; 1 *Phil. Ev.*, 346 ; 2 *Cow. & H.*, notes, 877.) A judgment of a court of one State has full and binding effect in every other. If the court had jurisdiction, it cannot be inquired into. (Mills *v.* Duryea, 7 *Cranch*, 481 ; McElmoy *v.* Cohen, 13 *Peters*, 324 ; 2 *Story on the Const.*, §§ 1309–1311 ; Hampton *v.* Connell, 3 *Wheat.*, 234 ; Starbuck *v.* Murray, 5 *Wend.*, 148 ; 1 *Kent's Com.* 279, note and cases ; Bissel *v.* Briggs, 9 *Mass.*, 462.)

III. The complaint states that " one undivided fourth part of the lands," mentioned in the contract, "passed to Jacob Mussina, in trust for himself and Simon Mussina, in *fee simple*, by virtue of the agreement;" and that this agreement was recorded in Texas. So that the defendants could not possibly have divested him of his interest in the lands by means of any of the alleged fraudulent conveyances mentioned in the complaint. Moreover, the conveyance to Basse and Horde by Stillman and Belden did not, according to the complaint, purport to convey any more than their own " right, title, and interest."

*Joseph L. Jernigan*, for the plaintiffs.—*First*, as to the jurisdiction. Under the Code, it is not necessary to consider whether this is in the nature of an action for damages for fraud and conspiracy, or of a suit in equity for an accounting. But if it were merely an action for damages, the court would have jurisdiction (1 *Chitt. on Pl.*, 267 ; 3 *Strange*, 646.; Corporation of New York *v.* Dawson, 2 *Johns. Cas.*, 325). On the

other hand, if it were a bill in equity, it would be maintainable here (2 *Story's Eq. Juris.*, § 744; Comes Argillas *v.* Muschamp, 1 *Vern.*, 75 (1682); Toller *v.* Carteret, 2 *Ib.*, 494 (1705); Penn *v.* Lord Baltimore, 1 *Ves. Sr.*, 444 (1750); Lord Cranstown *v.* Johnson, 3 *Ves.*, 170; Lord Portarlington *v.* Soulby, 3 *Mylne & K.*, 104; Massie. *v.* Watts, 6 *Cranch*, 148; and see Guerrant *v.* Fowler, 1 *Hen. & M.*, 5; Hughes *v.* Hall, 5 *Munf.*, 431; and Trustees of Epis. Ch. of Macon *v.* Wiley; 2 *Hill, S. C.*, 584; Mead *v.* Merritt, 2 *Paige*, 402; Mitchell *v.* Bunch, 2 *Ib.*, 606; Sutphen *v.* Fowler, 9 *Ib.*, 280; and Newton *v.* Bronson, 3 *Kern.*, 587). Nor is residence of the parties necessary to give jurisdiction. It is sufficient that the defendants are long enough within the jurisdiction to allow of personal service of summons upon them. Mussina *v.* Alling (11 *Louis.*, 568) is the only case which requires any thing more.

*Second.* As to the sufficiency of the complaint. 1. The decree in the Cavazos suit is void for fraud, upon the allegations of the complaint admitted by the demurrer. It may be treated as void, collaterally (Fermor's case, 3 *Coke*, 77; Duchess of Kingston's case, 20 *Howell's St. Tr.*, 536, 544; Borden *v.* Fitch, 15 *Johns.*, 121, 145; Andrews *v.* Montgomery, 19 *Ib.*, 164; Perry *v.* Meadowcraft, 10 *Beav.*, 122; Fletcher *v.* Rapp, 1 *Smede's & M.*, 375; State *v.* Little, 1 *N. H.*, 257; and see Webster *v.* Reid, 11 *How. U. S.*, 460). 2. Again, the parties and the subject-matter of this action are neither the same as in the Cavazos suit. 3. Even should it be admitted that the decree in the Cavazos case was of such a nature, that, under the law as it stood before the Code, a direct proceeding to impeach it was necessary, no such direct proceedings are any longer necessary, but the judgment may now be impeached for fraud, as well collaterally as directly, and it may even be set up as a defence to an action upon the judgment itself (Dobson *v.* Pearce, 2 *Kern.*, 156; Crary *v.* Goodman, 2 *Ib.*, 266).

DAVIES, J.—Upon the facts stated in the complaint, there can be no doubt (if this court has jurisdiction of the subject-matter of this action), that the defendants are legally bound to respond to the plaintiffs in damages, if any, which they may have sustained by reason of the fraudulent acts of the defendants.

Neither can there be any doubt, upon these facts, that the

plaintiffs are entitled to an account from the defendants of the moneys which they have received upon the sales of the land, or the rents and profits thereof.

It is contended, on the part of the defendants, that this court has no jurisdiction, from the fact that the lands out of which the controversy arises are situate in Texas, and that the title in them may be incidentally involved.

A similar objection was taken in the case of Massie *v.* Watts (6 *Cranch*, 148).

In that case a suit was instituted in the United States Circuit Court for the district of Kentucky, for the purpose of obtaining a conveyance of lands lying in the state of Ohio.

Chief-justice Marshall said, in that case, that if that cause was to be considered as involving a naked question of title, the jurisdiction of the Circuit Court of Kentucky would not be sustained; and he adds, " But when the question changes its character—when the defendant in the original action is liable to the plaintiffs, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practised on the plaintiffs, the principles of equity give a court jurisdiction whenever the former may be proved; and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction."

Chief-justice Marshall refers to Lord Hardwicke's opinion in the celebrated case of Lord Baltimore *v.* William Penn. This was a bill filed in the Court of Chancery for a specific performance of articles settling the boundaries of the then colonies of Maryland and Pennsylvania, made and executed between the respective proprietors thereof (1 *Ves. Sr.*, 444).

Two objections to the jurisdiction of the court were taken:

*First*—That the court had not, and ought not to take jurisdiction, for that the same was in the king and council.

*Second*—That the agreement ought not to be carried into execution by the court, as it affected the estates, rights, and privileges of the planters, &c., without the district, and the tenure and laws by which they live.

The case seems to have been maturely considered, and Lord Hardwicke says, in the commencement of his opinion, indicating clearly his view of its gravity and importance, that the subject

was " of a nature worthy the judicature of a Roman senate, rather than of a simple judge; and my consolation is, that if I should err in my judgment, there is a judicature equal in dignity to a Roman senate that will correct it." After discussing the power of the king in council, he says that the king in council cannot decree an agreement, not acting *in personam*, as that court could; that the conscience of the party was bound by the agreement, " and being within the jurisdiction of this court, which acts *in personam*, the court may properly decree it as an agreement, if a foundation for it exists." He further remarks, " that the court could not enforce their own decree *in rem* in the present case, but that was not an objection against making a decree in the cause—for the strict primary decree in this court, as a Court of Equity, is *in personam*."

" In Lord King's time, in the case of Richardson v. Hamilton, attorney-general of Pennsylvania, which was a suit for land and a house in the town of Philadelphia, the court made a decree, though it could not be enforced *in rem*. In the case of Lord Anglesey, of land lying in Ireland, I decreed for distinguishing and settling the parts of the estate, though impossible to enforce that decree *in rem;* but the party being in England, I could enforce it by process of contempt *in personam*, and sequestration, which is the proper jurisdiction of this court" (1 *Ves. Sr.*, 444).

In the case of the Earl of Derby v. Duke of Athol (1 *Ves.*, 201), the bill was filed to have discovery concerning the general title of the Isle of Man. The defendant pleaded in general to the jurisdiction of the court, that the Isle of Man was an ancient kingdom, not part of the realm, though belonging to the crown of Great Britain, and that no title to lands, &c., there, ought to be tried or examined into here. The lord chancellor sanctioned the jurisdiction of the court, and observed, that if the question raised was one of equity, it would certainly be for this court to determine it, although it was a matter out of its jurisdiction, as in the case of the Isle of Sarke. He also says, " So that upon a mortgage made of this isle, and both mortgagor and mortgagee resident within the jurisdiction of this court, upon a bill concerning it, the court would hold jurisdiction of it, for a court of equity *agit in personam*.

The case of the Isle of Sarke, referred to in the preceding case, was that of Toller a. Carteret (2 *Vern.*, 294). In that case

the defendant, being the owner of the isle, had executed a mortgage thereon, and upon suit brought in chancery in England, objected that the court had no jurisdiction, as the Isle of Sarke belonged to the duchy of Normandy. The lord-keeper said that the Court of Chancery had jurisdiction, the defendant being served with process here, that *equitas agit in personam.*

The case of the Count Argilasse *a.* Muschamp (1 *Vern.*, 75), upon the facts stated, is not dissimilar to the present. The plaintiff sought to be relieved against a rent-charge upon lands in Ireland, obtained, as he alleged, by fraud.

The defendant objected to the jurisdiction, first, that the lands lying in Ireland the matter was properly examinable there; and also, that the defendant was a resident in Ireland; and the doctors of the civil law were cited, who treat of jurisdiction in point of residence, arising only where a man commonly inhabits and where he may be said to have his domicil. On a petition for rehearing, the plea was again overruled. (Same cause, 1 *Vern.*, 135).

It was replied, on the part of the plaintiff, that the primary jurisdiction of the courts is to relieve against frauds and cheats, and it was contended that if the laws of Ireland did so differ from those of England, which they did not, as to allow of a fraud and cheat, that court had then the greater reason to relieve the cause and see justice done.

The lord-chancellor says, "This is surely a jest put upon the jurisdiction of this court by the common lawyers." The plea was overruled, and the defendant ordered to pay costs for endeavoring to oust the court of its jurisdiction. The lord-chancellor cited the cases of Archer *a.* Preston (1 *Eq. Ca. Ab.*, 133, *ch.* 3), in which case, if in any, he says the jurisdiction was local, the matter there being only for land that lay in Ireland; yet the defendant coming into England, a bill was exhibited against him here, and a *ne exeat regno* granted, and he put to answer a contract made for those lands. To the same point may be cited the case of the Earl of Kildare *a.* Sir Maurice Eusted and Fitzgerald (1 *Vern.*, 419).

This case would seem to settle very clearly the jurisdiction of the Court of Chancery in England, in cases like that now under consideration.

In our own State it has been regarded, since the decision of

Chancellor Sandford, in Ward a. Arredondo (*Hop.*, 213), that the like rule prevailed here. The chancellor says, " The elementary principle seems to be, that the jurisdiction may be upheld whenever the parties, or the subject, or such a portion of the subject, are within the jurisdiction, that an effectual decree can be made and enforced so as to do justice between the parties." The subject in reference to which the controversy arose in that case, was in relation to a contract made in Havana for the sale of lands lying in East Florida. The chancellor held that his court had jurisdiction, and that to entertain that suit was going no further than has been done by the English Court of Chancery, and the law in this country cited from Cranch. To the same point may be cited the cases of Shattuck a. Cassidy (3 *Edw. C. R.*, 152); Mead a. Merritt (2 *Paige*, 402); Mitchell a. Bunce (2 *Ib.*, 606); Sulptrin a. Fowler (2 *Ib.*, 280). If there could remain any doubt as to the jurisdiction of the Court of Chancery and of this court, as succeeding to the power and jurisdiction of that court, it must be regarded as disposed of by the Court of Appeals in the case of Newton a. Bronson (3 *Kern.*, 587).

This case also disposes of the objection so earnestly pressed upon the court by the defendant's counsel, that the action relating to lands is local, and can only be tried, according to § 123 of the Code, in the county where the lands are situated.

This provision of the Code the court held was inapplicable, when the land which is the subject of the action lies out of the State.

Neither is it necessary that the parties defendants should be residents of this State to subject them to its jurisdiction. All the cases show that it is only essential to acquire jurisdiction of their persons, and this can be accomplished by the service of process on them, however brief may be their sojourn within the State, or however temporary it may have been intended to be.

The cases already cited, it is deemed, clearly establish the jurisdiction of the Court of Chancery in cases where the parties are subjected to its process, in the courts of the United States, that of England, and of this State, even though the title to lands situated without its jurisdiction may be affected thereby. To these cases may be added D'Ivernois a. Leavitt, decided at general term, in this district, in October, 1856.

In harmony with these views, Story, in his Conflict of Laws, at section 543, affirms the same doctrine.

It was urged, on the arguments, that a contrary opinion had been expressed by the Supreme Court of Louisiana, in a suit pending in that court between these plaintiffs and these defendants. Whether or not the judgment in that case can be pleaded in bar to this suit, is a point not now necessary to discuss or consider. The case is referred to in this connection only as an authority, and I think it entirely fails to be regarded as such. The court, in giving their opinion, disclaim the power of a court of equity, and therefore deem the cases in the English Court of Chancery inapplicable to this system of jurisprudence. They also think the case of Massie *a.* Watts not authority, because "the people of Louisiana have always resisted the encroachments of foreign modes of procedure, and especially the peculiar doctrine and forms of chancery."

But it seems to me that this case is in direct conflict with the decision of McDowell *a.* Reed (3 *Louis. R.*, 391). That was a bill filed in the courts of Louisiana to enforce a trust in reference to lands and houses located in Mississippi. Stanbridge, J., in the court below, had decided against the plaintiffs, and on appeal the Supreme Court reversed his judgment. Eustis, Chief-justice, in delivering the opinion of the court, says : "We have held the case a long time under advisement, and after a thorough investigation of the subject, we are forced to dissent from the conclusions of the learned judges before whom the case was tried. We think the case referred to (Mássie *a.* Watts, *supra*) by the court for the plaintiffs, establishes the principle that when a court is called upon to enforce a right, it may avail itself of its jurisdiction over the person to do justice relative to a subject-matter beyond its territorial jurisdiction, though lands may be affected by the decree.

It seems to me that this opinion, rendered after long advisement, and thorough investigations of the subject, carries with it a much higher authority, and is entitled to far more consideration, than one founded mainly on the peculiar system of jurisprudence prevailing in Louisiana, and upon the prejudices of the people, who, it is said, have always resisted the encroachments of foreign modes of procedure, and especially the peculiar doctrines and forms of chancery.

Especially is it of inferior authority, opposed as it is to the strong current of opinion already cited.

I therefore dismiss it as of small moment in this case, particularly as it seeks to overthrow a decision of its own Supreme Court, which commends itself to my judgment as eminently sound and conclusive.

It is also insisted, on the part of the defendants, that the proceedings in Texas for the recovery of the judgment in the suit of Cavajos, however fraudulent on the part of these defendants, and how greatly soever the plaintiffs may be damnified thereby, are conclusive among them, as being the judgment of a court of competent jurisdiction. I do not so understand the law, and that for such a wrong committed, the party injured has no redress. While full faith and credit are to be given to the judicial proceedings of the courts of our sister States, I do not understand that a party injured by the machinery of these courts, or who has been deprived of rights, property, or liberty, by those who may have improperly or fraudulently set them in motion, has no redress against the wrong-doers.

It was laid down in Fermor's case (3 *Coke*, 77), that "the common law doth so abhor fraud and covin, that all acts, as well judicial as otherwise, and which of themselves are just and lawful, yet being mixed with fraud and deceit, are in judgment of law wrongful and unlawful; *quod alias bonum et justum est, si per vim vel fraudem petatur, malum et injustum efficitur.*"

In the Duchess of Kingston's case (2 *Smith's Leading Cas.*, 478), the lords in Parliament submitted to the judges the following question: "Whether the counsel for the crown may be admitted to avoid the effect of a sentence in a suit for jactitation of marriage, by proving the same to have been obtained by fraud and collusion?" And the judges were unanimously of the opinion that evidence might be given to avoid the effect of such a sentence, by proving the same to have been obtained by fraud or collusion.

The note in Fermor's case is cited with approbation by Thompson, Chief-justice, in Borden *a.* Fitch (15 *Johns.*, 121, at page 145). He says: "Whenever he (the defendant in this case) seeks to avail himself of any benefit from a divorce, procured by his own fraudulent conduct, although brought in collaterally, it would seem to me competent to allege this fraud, otherwise

he would be permitted to derive a benefit from his own misconduct—a *position altogether inadmissible.*"

This case is cited with approbation in that of Andrews *a.* Montgomery (19 *Johns.,* 164) ; Webster *a.* Reed (11 *How., U. S.,* 460) ; Perry *a.* Meadowcraft (10 *Beav.,* 122) ; Fletcher *a.* Rapp (1 *Smedes & M.,* 375) ; State *a.* Little (1 *N. H.,* 257) ; Dobson *a.* Pearce (2 *Kern.,* 156).

On a review of all the cases, and from much reflection upon them, I am clearly of the opinion that the demurrer cannot be sustained, but that the plaintiffs are entitled to a judgment, with liberty to the defendants to answer, on payment of costs, within twenty days.