## LATOURETTE *vs.* CLARKE.

45b 327
22ap243

The courts of New York have jurisdiction of actions for *torts* in regard to property, although they were committed out of the state, and although the parties were resident abroad, if the defendant is served with process here.

So held in respect to an action brought by a citizen of Missouri, against a citizen of Connecticut for combining and conspiring with other citizens of the latter state, to defraud the plaintiff, by false representations as to the soundness and condition of an insurance company. CLERKE, J. dissented.

APPEAL by the defendant from a judgment entered upon the report of a referee. The complaint sets forth, that on the 7th of September, 1854, and for twenty years previous thereto, there was a certain insurance corporation established at Hartford, Connecticut, under a charter from that state, entitled The Protection Insurance Company, during all that time doing an extensive business at various places throughout the United States, and especially at St. Louis, Missouri. That by the charter of that company "it is provided that any and every stockholder in said corporation shall, for misconduct or fraud, be personally liable to said corporation, or to the insured, as the case may be." That for more than ten years next before September 7, 1854, the defendant was a stockholder, and during the years 1850 and 1854 a director, in the company; that by January 1, 1849, the company, by reason of heavy losses, had sunk the whole of its capital, and become "wholly insolvent," and so continued till September 7, 1854, when it failed, being largely indebted, and hav-

ing no assets; that the defendant, and all the other directors, knew of the insolvency of the company from January 1, 1849, to September 7, 1854; that the defendant, knowing the premises, on or about January 1, 1849, did falsely, fraudulently, and deceitfully combine, conspire and confederate with the other directors "to hold out and to represent at all times thereafter, contrary to the fact, the said corporation to the public generally, and particularly to whosoever might, during said period, apply to the same for policies of insurance against loss or damage by fire, to be in a good, sound, and healthy condition, and possessed of a large capital, wholly unimpaired, of not less than $200,000," and by said "fraudulent and deceitful practices" to induce persons to insure in said company, and thus to enable it to do a large business; that, in pursuance of such conspiracy, the defendant and the other directors caused certain advertisements to be published in the Hartford *Daily Courant* and Hartford *Daily Times,* and certain other advertisements, by their agents, in the Boston *Daily Advertiser* and Boston *Post,* and in the St. Louis *Daily Republican,* and in the papers of other cities and states; that the defendant and other directors, in pursuance of said conspiracy, from January 1, 1849, to January 1, 1855, caused certain written statements of the pecuniary condition of the company, in compliance with the laws of Massachusetts, to be deposited with the treasurer of that state, and, in compliance with the laws of Missouri, to be deposited in the office of the county clerk of the county of St. Louis, with intent, by means of said advertisements and statements, to deceive the public and whom it might concern; that all of said advertisements and statements were wholly false, to the knowledge of the defendant and the other directors; that by means of the premises, the defendant and others caused the public to believe that on the 18th of October, 1853, the company was sound, and had an unimpaired capital of not less than $200,000; that the plaintiff, relying on the representations of the defendant and others, and believing the

same, insured in said company certain property at St. Louis,
October 18, 1853; that the same was injured by fire November 10, 1853; that the plaintiff has performed all the conditions of the policy; that the company failed September
7, 1854, and has ever since continued insolvent, and has never
paid the plaintiff's loss; that the plaintiff has thereby
suffered damage in the sum of $4149.10, with interest, for
which he demands judgment against the defendant.

The answer of the defendant alleges ignorance as to
whether the plaintiff has set forth a true copy of the charter,
or whether it is provided therein, that for misconduct or
fraud, the stockholders are personally liable, or whether the
company had sunk its capital by January 1, 1849, and was
insolvent from that time to September 7, 1854; denies that
he and the other directors knew that the company was
unsound or insolvent; denies that he knew of the insolvency
of the company; denies all fraudulent combinations alleged
in the complaint; denies that, in pursuance of any combination or conspiracy, he and others published, or caused to be
published, the advertisements set forth in the complaint;
denies knowledge as to the exhibits annexed to the complaint
being true copies; denies fraud and conspiracy as to statements alleged to be filed in Massachusetts and St. Louis;
denies that any advertisements or statements were published
or deposited with the fraudulent intent alleged; joins issue
on the plaintiff's case as respects the insurance and loss, and
compliance with the conditions of the policy; admits that the
company became insolvent and failed on or about September
7, 1854, and has ever since been unable to pay its debts.

At the trial before the referee, the plaintiff having rested
his case, the defendant moved to dismiss the complaint, because this court would not entertain jurisdiction of an action
for a deceit or tort, alleged to have occurred in Missouri, by a
citizen of Connecticut against a citizen of Missouri; also,
because this court has no jurisdiction of an action founded
solely on the municipal law of Connecticut; also, because

the alleged false representations upon which the plaintiff testified that he relied, were not in writing, signed by the defendant ; and that no cause of action arose against the defendant in Missouri, and, therefore, none elsewhere ; and also, for failure of proof of the facts alleged in the complaint. This motion was denied, and the defendant excepted.

The referee by his report finds the insolvency of the company during the time alleged, the defendant's knowledge of its condition, and the conspiracy charged in the complaint, and that in pursuance thereof " certain " representations were made. It does not find any of the representations charged in the complaint to have been made or published, and it finds the plaintiff's insurance, and loss, and that he relied on the representations made, and that the defendant is liable for the loss. He reported in favor of the plaintiff, for $7532.27. The defendant excepted to the finding both as to facts and loss.

*Wm. M. Evarts*, for the appellant.

———— ————, for the respondent.

INGRAHAM, P. J. I am not willing to concede that even in cases of personal *torts* committed in foreign countries, the Supreme Court has not jurisdiction of an action for damages where the parties are within the jurisdiction of the court. That jurisdiction depends upon the person and not on the place where the acts complained of took place. Although in such cases some judges have expressed an opinion that the courts could refuse to exercise such jurisdiction, I do not understand the rule to have been extended to actions for fraud in regard to property, even if such fraud was committed in another country. That fact might have weight upon a question of bail, but ought not to on a question of jurisdiction. A party may be without any redress if a person may commit a fraud in another state and immediately

remove into this state, unless the courts could entertain an action for redress therefor.

I concur with Davies, J. in *Mussina* v. *Belden,* (6 *Abb. Rep.* 165,) in the decision that the courts of this state have jurisdiction of actions for *torts* in regard to property, although they were committed out of the state, and although the parties were resident abroad, if the defendant was served with process in the state. The judgment should be affirmed.

GEO. G. BARNARD, J. concurred.

CLERKE, J. (dissenting.) This is an action brought by the plaintiff, a citizen of Missouri, against the defendant, a citizen of Connecticut, for combining and conspiring with other citizens of the latter state to defraud him by false representations. The defendant was one of several directors of an insurance company, doing business in Hartford, Connecticut, under a charter from that state, entitled The Protection Insurance Company, having agencies at various places throughout the United States, especially at St. Louis, Missouri. The plaintiff alleges that, relying on the representations of the defendant and other directors of the company that it was in a sound condition, and possessed of a large capital, wholly unimpaired, of not less than $200,000, he insured in said company certain property at St. Louis, October 18, 1853; that the same was injured by fire November 11, 1853; that he has performed all the conditions of the policy; that the company failed September 7, 1854, and has ever since continued insolvent, and has never paid the plaintiff's loss, and that he has thereby suffered damage in the sum of $4149.10. This, then, is clearly an action of tort, brought by the citizen of one foreign state against the citizen of another foreign state, for alleged injuries committed in one or both of those states. Shall we entertain jurisdiction of actions originating under such circumstances and between such parties? In other words, shall we sustain the judiciary establishments of our

state for the purpose of composing the disputes and redressing the wrongs of litigants who owe no allegiance or duty to it ?

This question, or rather questions nearly similar to it, have been presented in a few previous instances to our courts. There are, undoubtedly, several reported cases where they have entertained such a jurisdiction; but the first of which I have any knowledge, in which the question was directly presented and passed upon, is *Gardner* v. *Thomas*, (14 *John.* 134.) There, it was indeed asserted by the justice who delivered the opinion in that case, that this court may take cognizance of a *tort* committed on the high seas on board of a foreign vessel, both parties being citizens of the country to which the vessel belongs, but that it should rest in the sound discretion of the court to afford jurisdiction or not, according to the circumstances of the case; and, as it did not appear that the plaintiff in error, who was master, and the defendant, who was a seaman, of the vessel, did not intend to return to their own country, it was held that the defendant in error ought to have been left to seek redress in the courts of his own country on his return; and the judgment below was reversed. In *Johnson* v. *Dalton*, (1 *Cowen*, 543,) the same principles are asserted, stating that the courts should decline interference in ordinary cases; but, as the defendant in error, on whom the assault had been committed, had been legally discharged from the vessel in this country, the court upheld the jurisdiction. In *Smith* v. *Bull*, (17 *Wend.* 323,) which has been frequently quoted in relation to this subject, it was only decided that an action for an injury to the person committed beyond the territorial limits of this state, is transitory and may be brought in any court of common pleas in this state; but it did not appear that either party was a resident of another state, but on the contrary, it may be very safely inferred that both parties were residents of this state, who crossed the Susquehanna together from Tioga county, in this state, to Tioga county in Pennsylvania, where one made an assault upon the other. Of course this decision can have no

Latourette *v.* Clarke.

application to the question under consideration. *Malony* v. *Dows*, (8 *Abbott's Pr. R.* 318,) decided in the New York common pleas, at a trial term, before Judge Daly, is much more analogous. There, it was expressly decided that the courts of one state have no jurisdiction between citizens of another state for damages for personal *torts*, committed within the jurisdiction of another state. I have not been able to ascertain from the report in that case, whether the plaintiff had become a citizen of this state before he commenced his action. If he had, it would have been a stronger case than that before us, and would have gone farther than I should be inclined to go. If a citizen of one state should suffer a wrong from a citizen of another state in that or any other foreign state, I am inclined to think that the courts of his own state ought to afford him redress, if the defendant could be found within their jurisdiction. But I have little hesitation in saying that it is, at least, unreasonable for the citizens of one foreign state to call upon the courts of this state to interpose their authority to afford him redress against the citizen of another state for an injury committed in one of those states—an injury partaking of the twofold character of a private injury and a public wrong. I do not think that the tribunals of this state are constituted and supported for such a purpose. We have, unhappily, more than a sufficient number of controversies between our own citizens to examine and adjust, which demand from us prompt and careful attention; and we are not, by any means, willing to lend to the citizen of one foreign state, in a matter in which we have no concern, the harsh provisional remedy of an order of arrest against the citizen of another foreign state, while seeking our hospitality, and quietly and trustingly preparing to embark in a vessel in our port for a long voyage. For these reasons the judgment should be reversed, with costs.

Judgment affirmed.

[New York General Term, May 1, 1865. *Ingraham, Geo. G. Barnard* and *Clerke,* Justices.]