JOSEPH MADDEN, an Infant, by MARGARET TALBUT, his Guardian
ad Litem, Appellant, *v.* ISAAC ARNOLD, Respondent.

*An action lies in a State court for an injury done by a vicious dog on land ceded by
the State to the United States for an arsenal.*

The fact that, under article 1, section 8, subdivision 17, of the United States
Constitution, providing that Congress shall have power "to exercise exclusive
jurisdiction in all cases whatsoever  *  *  *  over all places purchased by the
consent of the Legislature of the State in which the same shall be, for the
erection of forts, magazines, arsenals, dockyards and other needful buildings,"
the Legislature of the State of New York has, by chapter 332 of the Laws of
1830, ceded land for the purposes of an arsenal, the State reserving to
itself, however, concurrent jurisdiction in so far as that civil process in all
cases may be executed therein, does not, in the absence of any legislation by
Congress relative to civil rights in such an arsenal, oust the State courts of jur-
isdiction of a civil action brought against the commanding officer of the arsenal
to recover damages for injuries inflicted by his vicious dog upon the plaintiff
while he was upon the arsenal grounds.

APPEAL by the plaintiff, Joseph Madden, an infant, by Margaret
Talbut, his guardian ad litem, from a judgment of the Supreme
Court in favor of the defendant, entered in the office of the clerk
of the county of Albany on the 5th day of August, 1897, upon a
nonsuit granted by the court at the close of the testimony, on the
ground that the Supreme Court of the State of New York had no
jurisdiction of the action.

*P. C. Dugan*, for the appellant.

*E. Countryman*, for the respondent.

PUTNAM, J. :

The plaintiff, a resident of the county of Albany, sought to recover damages against the defendant for injuries inflicted by a vicious dog on land purchased by the United States in 1828, and over which the Legislature of the State of New York had ceded jurisdiction by chapter 332 of the Laws of 1830, for the purpose of erecting and maintaining thereon an arsenal, magazine, dock yards and other necessary buildings, reserving to the State concurrent jurisdiction with the United States, so far as that civil process in all cases, and such criminal process as may be issued under authority of the State of New York against any person or persons charged with crimes committed without the said tract, may be executed therein.

Since said cession, the United States has used said premises for the purpose of an arsenal, and the defendant, at the time in question, was the commanding officer thereof.

It was conceded by the defendant on the trial that the plaintiff had made out a *prima facie* case to go to the jury, if the court had jurisdiction of the action. But the defendant urged that the Supreme Court of this State had no jurisdiction of an action to recover damages for an injury sustained within the precincts of the arsenal, the land having been purchased by the United States, and jurisdiction over it ceded by the State of New York, under the provisions of article 1, section 8, subdivision 17 of the National Constitution, which provides that Congress shall have power " to exercise exclusive legislation in all cases whatsoever    *    *    *    over all places purchased by the consent of the Legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful buildings."

The court below sustained this contention and directed a judgment of nonsuit.

Unless the plaintiff can maintain this action, it is clear that he has no remedy for the injury it is conceded he has sustained. While Congress has by law provided for the punishment of crimes committed within any fort, arsenal, dock yard, magazine or other place

under the exclusive jurisdiction of the United States (U. S. R. S. §§ 5339, 5391), it has made no provisions by which one sustaining damages in any arsenal and place within its exclusive jurisdiction can recover in a civil action against another residing in the same State. An examination of the provisions of the Revised Statutes of the United States shows that neither the Circuit nor District Courts of the United States have jurisdiction of such an action. (U. S. R. S. §§ 563, 571, 629, 657.)

Hence, under the ruling of the lower court, the plaintiff, having sustained an injury at the hands of the defendant for which he should be entitled to recover damages, cannot maintain an action therefor in the courts of this State or those of the United States. He is without remedy. It is not claimed that Congress has by any legislation deprived the courts of this State of jurisdiction to afford relief for injuries suffered in the ceded district, or made any legislation affecting such district, except for the punishment of crimes committed therein. It may be conceded that Congress has the power to provide by statute for the enforcement of civil rights in such ceded territory, and for the recovery of damages for injuries sustained therein, in civil actions, before such courts as it might designate. The question for our consideration is whether, in the absence of such legislation, for an injury to a citizen, such as the plaintiff sustained, committed within this State in territory thus ceded to the United States, our courts are deprived of jurisdiction.

The place where the plaintiff was injured was acquired by the United States by purchase for the purpose of an arsenal, and ever since has been used as such, and the State of New York ceded exclusive jurisdiction over said territory to the United States. Hence, under the provisions of the National Constitution, Congress has power to exercise exclusive legislation therein in all cases whatsoever. Yet, although the injury to recover damages for which the plaintiff brought this action was sustained on land over which the National government had exclusive jurisdiction, it had no more exclusive jurisdiction over such territory than the respective Legislatures of the neighboring States of Massachusetts, Pennsylvania or Ohio have over their respective territories. Had the injury of which the plaintiff complains occurred within the limits of either of said States, an action could have been maintained in the Supreme

Court of this State to recover damages therefor (*Newman* v. *Goddard*, 3 Hun, 70; *Tupper* v. *Morin*, 12 N. Y. Supp. 310; *De Witt* v. *Buchanan*, 54 Barb. 31; *Mussina* v. *Belden*, 6 Abb. Pr. 165; *Latourette* v. *Clarke*, 45 Barb. 327; *Smith* v. *Bull*, 17 Wend. 323; *Glen* v. *Hodges*, 9 Johns. 67; *Gardner* v. *Thomas*, 14 id. 134; *Johnson* v. *Dalton*, 1 Cow. 543), although it has been held that our courts may, in their discretion, refuse to entertain jurisdiction of an action between citizens of a foreign State for acts committed within their State. (*Burdick* v. *Freeman*, 120 N. Y. 420.)

If an action can be maintained in the courts of this State by a citizen thereof for a personal injury suffered in another State or country, we can see no good reason why such action cannot be maintained when the injury was committed in this State, on land purchased by and ceded to the United States. The effect of such cession and purchase is merely to create, so to speak, within our territory, a foreign state or territory. If we assume that the place where the plaintiff was injured, being within the exclusive jurisdiction of the United States, was in fact like a foreign territory not within any jurisdiction of the State of New York, under the authorities above cited it would seem that the plaintiff might maintain an action for a personal injury sustained in such place.

In *Wilson* v. *Mackenzie* (7 Hill, 95) it was held that an action for a trespass could be maintained against an officer of the navy for illegally assaulting one of his subordinates, although the illegal act was done on the high seas.

In *Armstrong* v. *Foote* (11 Abb. Pr. 384) it was decided that an action to recover damages for a personal tort can be maintained in the courts of this State, although the act complained of was done within the limits of the Brooklyn Navy Yard.

In *Delamater* v. *Folz* (50 Hun, 528) an action was sustained, brought in a County Court for the wrongful action of the defendant in injuring a sewer built by the plaintiff through lands of the United States at Buffalo. (See, also, *Lotterle* v. *Murphy*, 67 Hun, 76.)

The action of *Barrett* v. *Palmer* (135 N. Y. 336; *Palmer* v. *Barrett*, 162 U. S. 399) was brought to recover for a trespass committed in a portion of the Brooklyn Navy Yard over which jurisdiction had been ceded to the United States by the

State of New York.  In the United States court the judgment obtained in the court below was affirmed on the ground that the provisions of section 8, article 1 of the National Constitution did not apply to the territory in question, as it did not appear that the consent of the State was given at the time that the purchase of the land was made by the National government, and, hence, the condition in the act of cession by the State, that the United States might retain jurisdiction as long as the premises should be used for the purpose for which such jurisdiction was ceded, was valid; and that as, at the time of the trespass complained of, the premises were leased to the city by the government officers and not used for the purpose of a navy yard, under the act of cession the United States had no exclusive jurisdiction, and, hence, that the action was properly brought in the State courts.  The affirmance of the judgment in the Court of Appeals was placed on a different ground not considered in the United States court.  Its decision assumed that jurisdiction over that part of the Brooklyn Navy Yard where the trespass was committed was vested in the United States by the act of cession, and was not based on the fact that such territory had ceased to be used for governmental purposes.  The ground on which the Court of Appeals placed its decision appears in the following extract from the opinion of O'Brien, J.: "But it has been held that the State may cede to the general government political jurisdiction over such lands, and then congress has the power to legislate in regard to them.  We are not disposed to hold that even then the judicial power of the courts of this State would be powerless to redress private injuries committed thereon, or that the injured party would be compelled to seek justice in some other jurisdiction.

"The State did cede such political authority to the Federal government with respect to the lands in question, with certain reservations.  Congress has not, however, made any new regulations touching the administration of justice in civil cases with respect to actions arising therein, and until some such regulations have been made the municipal law of the State for the protection and enforcement of private rights through the courts remain unchanged.  (*C. & P. R. Co.* v. *McGlinn*, 114 U. S. 542; *F. L. R. Co.* v. *Lowe*, Id. 525.)

" The cession of territory by one sovereignty to another does not abrogate the laws in force at the time of the cession for the administration of private justice. Not at least until the new sovereignty has abrogated or changed them do such laws cease to operate, except possibly so far as they may be in conflict with the political character, institutions and Constitution of the government to which the territory is ceded."

As we understand the decision of the Court of Appeals in the case cited, it was based on the assumption that the general government had political jurisdiction over the lands on which the trespass was committed, but as Congress had not legislated touching the administration of justice in civil cases arising therein, the law of the State for the protection of private rights through its courts remained unchanged.

We have been referred to the cases of *Fort Leavenworth R. R. Co.* v. *Lowe* and *Chicago & Pacific Railway Co.* v. *McGlinn* (114 U. S. 525, 542). In the first case the facts were as follows: The United States owned the lands on which the Fort Leavenworth military reservation was situated at the time Kansas was admitted as a State. In the year 1875 that State ceded to the United States exclusive jurisdiction over such land, " saving, however, to the said State the right to serve civil or criminal process within said reservation in suits or prosecutions for or on account of rights acquired, obligations incurred or crimes committed in said State, but outside of said cession and reservation ; and saving, further, to said State the right to tax railroad, bridge and other corporations, their franchises and property on said reservation." It was held that the provisions of article 1, section 8, of the National Constitution, that Congress shall have power to exercise exclusive legislation in all cases whatsoever over all places purchased by the consent of the Legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful buildings, did not apply to the land in question, because it was purchased by the United States prior to the admission of Kansas into the Union, and without the consent of the State, and being thus purchased, the clause in the act reserving to the State a right to tax certain corporations therein mentioned was valid, the provisions of the National Constitution not applying ; and hence the tax imposed by the State on the plaintiff in error was authorized. But it was also held in that case that the

State may cede to the United States *exclusive jurisdiction* over a tract of land within its limits in a manner *not provided for in the Constitution* of the· United States. In the case of such a cession, however, the State may prescribe the conditions, if not inconsistent to the effectual use of the property for the purposes intended.

In *Chicago & Pacific Railway Co.* v. *McGlinn* the action was brought in a State court of Kansas by the defendant in error to recover the value of a cow killed by the cars of the plaintiff in error within the said Fort Leavenworth military reservation. The defendant in error obtained judgment, which was affirmed by the Supreme Court of the United States. In the opinion of Mr. Justice FIELD the following doctrine is enunciated : " The government of the State of Kansas extended over the reservation, and its legislation was operative therein, except so far as the use of the land as an instrumentality of the general government may have excepted it from such legislation. In other respects the law of the State prevailed. There was a railroad running through it when the State ceded jurisdiction to the United States. The law of the State making the railroad liable for killing or wounding cattle by its cars and engines, where it had no fence to keep such cattle off the road, was as necessary to the safety of cattle after the cession as before, and was no more abrogated by the mere fact of cession than regulations as to the crossing of highways by the railroad cars, and the ringing of bells as a warning to others of their approach.

" It is true there is a wide difference between a cession of political jurisdiction from one nation to another and a cession to the United States by a State of legislative power over a particular tract, for a special purpose of the general government ; but the principle which controls as to laws in existence at the time is the same in both. The liability of the railroad company for the killing of the cow did not depend upon the place where the animal was killed, but upon the neglect of the company to enclose the road with a fence which would have prevented the cow from straying upon it. The law of Kansas on the subject, in our opinion, remained in force after the cession, it being in no respect inconsistent with any law of the United States, and never having been changed or abrogated." And the court sustained the judgment obtained in a State court of Kansas for the injury suffered by the defendant in error.

It will be observed that, by the act of cession of the State of Kansas above quoted, *exclusive jurisdiction* was conferred on the United States over the land embraced in Fort Leavenworth military reservation, with a reservation merely of a right of taxation of certain corporations, and the right to serve civil and criminal process within said reservation. Hence, as far as the right of the defendant in error to maintain the action was concerned, the jurisdiction of the United States was as exclusive as is its jurisdiction over the territory occupied by the arsenal at West Troy. (And see *Benson* v. *United States*, 146 U. S. 325.)

If the State cedes exclusive jurisdiction to the United States over land within its limits, in a way not provided for by the National Constitution, the jurisdiction of the National government is just as exclusive as if it had obtained the land by purchase with the consent of the State under the provisions of the Constitution, the only effect of the former mode of acquiring jurisdiction being that the State may impose valid conditions by the act of cession, which could not be done if the territory was acquired in the manner provided for in the Constitution. As in the case cited, it appears that, by an act of the Legislature of the State of Kansas, the National government had exclusive jurisdiction of the territory in question, under the doctrine established therein — as was also the case in the other authorities to which we have referred — we see no reason to doubt but that this action can be maintained in the Supreme Court of this State.

We have examined the authorities cited by the learned counsel for the respondent, and are of opinion that they do not compel us to reach any other conclusion than that above arrived at. The cases of *United States* v. *Cornell* (2 Mason, 60); *United States* v. *Travers* (2 Wheel. Cr. C. 490), and *Commonwealth* v. *Clary* (8 Mass. 72) were criminal proceedings. As we have seen, Congress has legislated as to crimes committed in its forts, arsenals and territory. It has by law prescribed the punishment for crimes committed therein, and the courts before which criminals shall be tried. Congress having thus established a criminal code for its forts, arsenals and territory, the criminal laws of the State in which such territory is situate cease to operate therein.

The cases of *Sinks* v. *Reese* (19 Ohio St. 306) and *Opinion of Judges* (1 Metc. 580) hold that one residing in a fort or arsenal of the

United States over which the State has ceded exclusive jurisdiction, was not to be deemed a citizen or resident of the State, so as to be entitled to the benefit of its common schools, or to exercise the right of elective franchise therein ; that he is to be regarded as a resident of another State or country. But if the land thus ceded to the National government within a State is regarded as territory outside of the State, as we have seen, that fact does not prevent the maintaining of an action for a personal injury sustained therein in the courts of such State. If the premises occupied by the arsenal at West Troy are regarded as a foreign territory, yet for an injury sustained therein an action can be maintained in our courts, as if such cause of action had arisen in Pennsylvania or Ohio.

The case of *Mitchell* v. *Tibbetts* (17 Pick. 298), cited by the learned counsel for the respondent, decides that the Charlestown Navy Yard was not to be deemed within the State of Massachusetts under the provisions of an act requiring vessels employed in transporting stone within the Commonwealth to be weighed and marked. In *United States* v. *Ames* (1 Wood. & M. 76), also cited by the defendant, it was held that territory over which exclusive jurisdiction had been ceded to the United States by a State is subject to the laws of Congress, and not to those of a State *when conflicting in any degree* with what has been required or provided by the general government; that State laws must yield to those of Congress, *if any are so made.* In the case cited, an action was brought by the United States against the defendant for flowing lands over which jurisdiction had been ceded to the National government by the State of Massachusetts. The defendant set up a prior award as a defense. The decision was placed on the ground that the district attorney who entered into the submission of arbitration on the part of the National government was without power to do so, and hence the award was void. We are unable to see that this authority conflicts with the views above expressed.

We reach the conclusion that the judgment should be reversed and a new trial granted, costs to abide event.

All concurred.

Judgment reversed and a new trial granted, costs to abide the event.